TIMOTHY H. CHAMBERLAIN & *al. vs. The Inhabitants of* DOVER.

Where a town clerk has made a defective or erroneous record of a vote, it is competent for him, while in office, to amend it according to the truth.

When a town clerk has made on erroneous record of a vote, the inhabitants of the town are not bound by it, because others have confided in its correctness; but are entitled to have it set right.

There cannot be a legal town meeting, unless it be originally held at the time and in the place appointed in the warrant for calling the meeting.

When a meeting is once fairly organized at the time and place appointed in the warrant, it possesses the incidental power of adjourning to a future time.

Where a meeting is called at a school house, it must be understood to mean within its walls.

Where the record of a town meeting states, that " the inhabitants met in the highway, and read the warrant in the open air, and adjourned the meeting" to a different place ; parol evidence is admissible, at the instance of the inhabitants, to prove the time when and the place where the transactions took place, how many persons were present, and that others came afterwards to attend the meeting, and finding no appearance of such meeting, went home.

Where a town meeting was called at a school house at one o'clock, P. M., and the town clerk and four or five others went into the street opposite to the school house, and at half past one read the warrant in the open air, and immediately voted to adjourn, before the choice of a moderator, and without leaving any notice at the school house, to a store at the distance of a mile and on the border of the town, at which place not more than fourteen of two hundred and sixty voters attended, and when other inhabitants went to the school house to attend the meeting, and finding no indications of one, went home ; *it was held,* that the acts of the meeting at the store, although placed by the town clerk on the town book of records, were not binding upon the town.

THIS was an action of *assumpsit* on a contract dated *January* 24, 1834, made with the plaintiffs, by *A. S. Patten* and *E. R. Favor,* assuming to be authorized by the defendants to contract to build a bridge at the great falls in *Dover,* and was tried before *Weston C. J.*

To prove the authority of *Patten* and *Favor* to make the contract in behalf of the defendants, the plaintiffs called *Flavel Bartlett,* the town clerk of *Dover* for the years 1834 and 1835, who produced the records of the town, and testified, that the entry in the margin of the record of the proceedings of the meet-

ing of *Jan.* 15, 1834, was not made by him at the time he made the other parts of the record ; and he also stated on cross-examination, objection being made thereto by the counsel for the plaintiffs, that the marginal entry was in fact true.

The meeting was called at the school house in district No. 2, where the town meetings had usually been called for several years previously, on the 15th day of *Jan.* 1834, at one of the clock, P. M.

The second article in the warrant was, " To see if the town will rebuild the bridge at the great falls in *Dover.*" The record of the proceedings of this meeting commenced thus :

" The inhabitants of *Dover* met agreeably to warrant and opened the meeting by reading the warrant and adjourned the meeting to *A. S. Patten's* store. Met according to adjournment and proceeded to business in the following manner, viz :

Art. 1st. Voted, and chose *Benj. Spaulding,* moderator to govern the meeting.

2d. Voted to re-build the bridge at the great falls."

In the margin of the book of the records and opposite the extract here given, the town clerk had made the following entry :

" *Dover, Jan.* 15, 1834. The inhabitants of *Dover* met in the highway near the school house, in district No. 2, and read the warrant in the open air, and adjourned the meeting to *A. S. Patten's* store."

The manner of building the bridge was prescribed in another vote, and *E. R. Favor, Flavel Bartlett* and *A. S. Patten* were chosen " contracting and building committee." *Bartlett* did not act as one of the committee.

The defendants read from the same records the proceedings of a legal meeting of the inhabitants of *Dover,* holden on the 8th day of *February,* 1834, the following votes ; sufficient authority to act on the subject having been given in the warrant calling that meeting :

" 2d. Voted, to reconsider certain votes taken and recorded on the 15th day of *Jan.* 1834.

" Voted, to repair the bridge at the great falls, in *Dover,* so that it shall be a good and sufficient bridge.

" Voted, That the selectmen and town agent be instructed to forbid any person or persons from interfering with or disturbing the old bridge, under any vote or supposed vote of said town, prior to *Jan.* 30, 1834.

The defendants then offered to introduce parol evidence to shew, what had been done at the school house of district No. 2, at the time the meeting in *January* was appointed to be held there, and what had been done afterwards on that day at *Patten's* store, which testimony was admitted by the Chief Justice, although objected to by the counsel for the plaintiffs. The testimony reported on this subject is not entirely consistent; but it appeared, that on the day appointed for the *January* meeting, the town clerk and four or five other persons met near the school house door at about half past one, P. M.; that there was a lock on the door and a snowdrift before it; that the weather was cold and no fire there, and that they did not enter the school house; that after about five minutes the town clerk read the warrant in the open air, and *Patten,* or *Favor,* moved to adjourn to *Patten's* store, which motion was put and carried without dissent; that *Patten's* store was more then a mile from the school house and within fifty or sixty rods of the line of the town of *Foxcroft,* but in a village where considerable business was done; that a motion was made at *Patten's* store to adjourn the meeting, which was not carried; and that at *Patten's* store five voted in favor of what was done there, and four against it, and that there were three or four present, who did not vote. It also appeared, that there were in town from 260 to 300 voters, and that the vote of *February* 8th, to reconsider what was done at the meeting in *January,* was passed by over one hundred majority. But one instance of an adjournment of a meeting to a different place was shewn, and that to a place but a few rods distant from the place, where the meeting was called. Several persons went to the school house, where the *January* meeting was called, soon after the appointed time, and seeing no appearance of a meeting, and no notice on the door, that the meeting was adjourned to another place, went home. Some of them would have gone to *Patten's* store, had they known of the meeting there. The plaintiffs, who were not inhabitants of *Dover,* made preparations for building the bridge,

procured some materials, and were at some expense, but desisted from further operations, after being notified of the proceedings of the inhabitants of *Dover* at the meeting on the 8th of *February*.

The counsel of the defendants insisted, that the town was not bound by what was done at *Patten's* store, but consented that the verdict should be taken for the plaintiffs; it being agreed by the parties, that if in the opinion of the Court upon the evidence, so far as it is competent and admissible, the action is not supported, that the verdict should be set aside, and the plaintiffs become nonsuit.

*J. Appleton*, for the defendants, said, that on this report, they were entitled to a new trial, if any legal grounds for it appeared in the case. In his argument he took these positions.

1. The clerk had legal authority to amend his record according to the truth. *Welles* v. *Battelle*, 11 *Mass. R.* 481; *Thacher* v. *Miller*, *ibid*. 413; *Avery* v. *Butters*, 9 *Greenl.* 16.

2. The meeting at which the committee are said to have been chosen was illegal and void. It was not held at the time or place ordered by the selectmen, as required by the *stat. ch.* 114, *sec.* 5. The meeting was called at the school house in district No. 2, and was held at *Patten's* store, and called at one P. M., and before the expiration of the hour adjourned to another place. *Angell & Ames on Corp.* 279; *Rex* v. *May*, 5 *Burrow*, 2682.

The meeting was void, because it appears by the record, that the meeting was adjourned before a moderator was chosen. The meeting is not organized until a moderator is chosen, and the town clerk has no right to preside, or put or declare any vote, but such as relate to the choice of a moderator. *Stat. ch.* 114, § 3. If one act may be done before the choice of a moderator any other may. The statute is imperative, that the moderator shall first be chosen. An adjournment presupposes a meeting, and there can be no organized, or legal meeting until the choice of a moderator has taken place.

The meeting at *Patten's* store was void, because no time was fixed for the alleged adjourned meeting there.

Thus far the question has been considered on what appears on the face of the record; and in the view of the defendants, the record alone shows, that there could be no act done at *Patten's* which can bind the town.

3. The parol testimony was rightly admitted. It does not contradict the record, nor is inconsistent with it, and may be admitted to shew the actual proceedings. The testimony is also admissible to shew fraud in the transactions. Fraud may be practised upon a town, as well as upon individuals, and parol evidence is competent to prove fraud to avoid a record. *Angell and Ames on Corp.* 289, 290, and cases there cited.

The counsel then examined the evidence, and urged, that on the facts there was no meeting having the semblance of a legal one, and that gross fraud had been practised upon the town by the persons calling themselves a committee, and which absolved the town from all legal and honorary obligations to perform any contract thus made. The remedy of the plaintiffs is on the persons, who employed them, and not on the town.

*Rogers and W. P. Fessenden,* for the plaintiffs, in their arguments, contended, that the plaintiffs were not bound to look beyond the record, as it stood when the contract was made, to ascertain that the persons contracting with them had authority from the town. Unless reliance can be placed upon the record, it would be wholly unsafe ever to make a contract with a corporation. It is not competent for the town to alter a record of their own to avoid a contract made with the plaintiffs in pursuance of it. That no alteration or amendment of a record can be made after the rights of third persons have intervened to affect them, is a principle of law too well settled to require the citation of authorities for its support. By that record, as it then stood, the committee, were chosen at a legal meeting and had full power to make the contract. The plaintiffs were not bound to go behind the record. *Thayer* v. *Stearns,* 1 *Pick.* 109 : *Moor* v. *Newfield,* 4 *Greenl.* 444. The record, as it then stood, shew, that the inhabitants met at the time and place appointed for holding the meeting and adjourned to another place. But it is said, that there was no legal adjournment, because it appears that the moderator of the meeting was chosen afterwards. The statute is merely directory, and there must necessarily be an organization of the meeting before the moderator can be chosen. One provision of the same statute is, that the meeting shall first be opened. Now the argument for the defendants would preclude any ad-

journment whatever until the moderator was chosen, even if the town was unable to make choice of one. The adjournment was a mere preliminary proceeding, and might well take place at any time, when convenient, and must sometimes take place before the choice of moderator. Nor is there any insuperable objection to acting without any moderator, if the town waive the choice, as the clerk records the votes. The case *Dodds* v. *Henry, 9 Mass. R.* 262, decides, that the town clerk properly acts, as moderator, until one is chosen. It is said, the inhabitants of the town have no power to adjourn a meeting to a place different from that at which it was called by the selectmen. If this be true, then however inconvenient the place may be ; although as in this case the door may be locked and the proprietors of the building will not suffer the people of the town to enter, although there is no fire, and no means of writing a vote or recording it are found, and although it might be, that the building was burned down ; still no adjournment to a suitable place can be had. There is nothing in the statute restricting the town from adjourning to a different place, any more than to another time. If the right exists, the rest is a mere exercise of discretionary power at the will of the majority. It can make no difference by what majority a vote passes. The vote is equally binding on the town whether the majority be one or one hundred. The committee may be authorised to contract by a subsequent ratification, as well as by a prior authority. The votes at the meeting on *February* 8th, affirm the former votes. They undertake to rescind as well as to affirm them, but they have power to affirm and ratify, but not to rescind, when the rights of third persons have intervened. *Prop. Canal Bridge* v. *Gordon,* 1 *Pick.* 304; *Hayden* v. *Madison, 7 Greenl.* 76; *Abbott* v. *Hermon, ibid.* 118.

The counsel also contended, that neither in the case, nor on the facts, was there any ground for imputing fraud to any one ; but this, if made out as to inhabitants of the town, could not alter the rights of the plaintiffs, who were neither parties to it, nor conusant of it.

After a continuance, *nisi,* the opinion of the Court was drawn up by

---

---

WESTON C. J. — It was the duty of the town clerk to record the doings and proceedings of the town. And if through inadvertency or misapprehension, the record has been defectively made, it is competent for him while in office to complete it, by amending it according to the truth. He acts at his peril, and will be liable, if he falsifies or mistakes what it is his duty to record. *Welles et als.* v. *Battelle et als.* 11 *Mass. R.* 477, is a case exactly in point. The town clerk testified, that the record is true as amended which, at least until impeached, must have been presumed without his testimony.

The principal question presented to our consideration is, whether the town are bound and concluded, by the proceedings of the meeting, held on the fifteenth of *January*, 1834. In all measures, in regard to which towns are authorised to act, at all legal meetings the doings of the majority present bind, not only the minority, but all who are absent. But the exercise of this power is subject to certain regulations, intended to afford full and fair opportunity to every citizen to be present, and to take part in any business, by which the interest of the town may be affected. Thus public notice is required to be given in a certain, manner, and for a certain number of days, of the time and place of meeting, and of the subjects to be acted upon. When a meeting is fairly organized, it doubtless possesses the incidental power of adjournment to a future time. We do not say that they may not have the right to adjourn to another place. But there should be limitations to the exercise of such discretion. It could not be tolerated that a few persons, by concert or otherwise, should be permitted to attend at the precise time appointed, and forthwith adjourn from a central to an extreme part of the town. In the case before us, the meeting called was never held at the place appointed. It was to be at the school house, which must be understood to mean within its walls. If the adjournment from the usual place of holding town meetings to a distant point on one side of the town, could under any circumstances be proper, about which we give no opinion, it was a measure, which could be taken only at a regular meeting, to the validity of which place, as well as time, is undoubtedly essential. This case is as strong, as any one that could be selected, to illustrate the necessity of

maintaining this principle. The meeting was appointed at one. In half an hour from that time, half a dozen persons, one of whom is the town clerk, appear in the street. The town clerk reads the warrant; and they there vote forthwith to appear at a distant place, to which they immediately repair. Other citizens attend at the place first appointed, with a view to take part in the business, and finding no trace of a meeting, return home. They had no means of knowing, that it was then going on at *Patten's* store. We cannot but regard it in the highest degree dangerous to the rights of towns to hold them concluded by such a course of proceeding. It is most manifest, that the citizens of the town were thus deprived of the privilege of being present at the transaction of important business, affecting their interests. A measure was taken, which a large majority disapproved. This is demonstrated, by the proceedings of a subsequent meeting. Why should the small number at *Patten's* store bind the town? The only reason that could be assigned is, that every citizen had notice, and might have attended there, if he had been so disposed. But this is not true in fact. There is no reason to believe, that one tenth part of the citizens ever heard of the meeting at the store, until it was over.

We are aware of no legal reason, why the town should not be permitted to sustain their objections, by the testimony they introduced. It does not contradict the record. From that it appears that no meeting was held at the place appointed, but that an irregular one was held at a different place; and the testimony objected to shows, what otherwise might have been presumed, that many citizens were thereby deprived of the opportunity of being present, and taking part in their own concerns.

It is contended, that the validity of the proceedings at *Patten's* store, is recognized by the regular meeting in *February*, when the town voted to reconsider certain votes taken and recorded in *January*. But we are of opinion, that no such inference can fairly be drawn from that vote. It was the mode they adopted of expressing their disapprobation of the course previously pursued. To hold that the former doings were thereby ratified, would be to deduce a meaning from their vote, in direct opposition to their intentions. The previous doings did not bind the

town. It should have been one of the articles in the warrant for a regular meeting, to see whether the town would ratify those doings, and an affirmative vote had thereon, before they could be confirmed, so as to be binding on the town. *Stat.* of 1821, *ch.* 114, regulating town meetings, § 5.

It is urged, that prior to the amendment of the record, the plaintiffs had reason to believe that the committee of the town were clothed with sufficient authority, and that being in no fault, the town should be precluded from denying their authority. If the clerk makes an erroneous record, the town are not bound by it, merely because others confide in its correctness. They are notwithstanding entitled to have it set right. Otherwise they would be concluded, not only by their own votes, but by whatever by design or accident, might be improperly entered by the clerk, and that without any chance of relief by amendment. The plaintiffs made their contract with certain persons, assuming to be agents of the town. Their remedy is against the agents, if they acted without authority.

The opinion of the Court is, that the action is not supported; and the verdict is accordingly set aside.

*Plaintiffs nonsuit.*