# Melvin's Case.

1. In a petition for contesting an election, alleging that it was not held at the places appointed by law, &c., it is not material that it does not allege that the irregularities were committed for the purpose of advancing the election of the respondent and defeating the complainant.

2. If material, it is an informality which may be amended.

3. Setting out the facts and averring that the election was undue and that the respondent was illegally and wrongfully elected and the contestant duly elected, is sufficient to give the court jurisdiction.

4. Holding the election at the place fixed by law is essential to its validity.

5. It *seems* that on the destruction of the designated building on the eve of an election, it might be held on the same or contiguous ground.

6. In such case the necessity must be absolute, not merely convenient.

7. *Necessitas non habet legem.*

8. A committee of the legislature deciding a contested election, acts in a judicial character.

9. If an election be held at a place not fixed by law, the returns should be stricken out by the return judges.

10. A whole election district may be stricken out on showing an entire disregard of conformity to the law in holding it, either by design or ignorance.

11. Where an election was not opened till 2 o'clock P. M., the law requiring it to be opened between 6 and 7 o'clock A. M., the return should be rejected.

March 31st 1871.    Before THOMPSON, C. J., READ and SHARS-
WOOD, JJ.    WILLIAMS, J., at Nisi Prius.

Certiorari to the Court of Quarter Sessions of *McKean county*:
No. 419, of January Term 1871.

In the matter of the contested election of Charles C. Melvin as
treasurer of the county of McKean.

On the 20th of December 1870, twenty-seven qualified electors
of the county of McKean presented a petition to the Court of
Quarter Sessions; setting forth:—

"That the officers of the general election held for the said
county on the 11th day of October last, returned that at said election
Charles C. Melvin received 804 votes for the office of treasurer of
said county, and John R. Chadwick received 762 votes for the said
office of treasurer.    The petitioners complain that the said elec-
tion was undue and illegal, and that the said John R. Chadwick
was duly elected treasurer of said county, and not the said Charles
C. Melvin; and they set forth the following facts on which their
complaint is founded, by which it will appear that the said John
R. Chadwick was elected treasurer aforesaid: * * * That in the
election district of Wetmore the said election was not held at the
house of William Toby, the place fixed by law, &c., and also the
place designated in the sheriff's proclamation, but was in fact held
at a place about three miles distant therefrom, to wit, at the school-
house at Wetmore station.    And therefore your petitioners aver
that the election in said district was illegal and void, and that the
votes in said district ought not to be counted, whereas the same
were returned by the board of election to the return judges as 47
votes for Charles C. Melvin, and 4 votes for John R. Chadwick,
for the said office of treasurer, and by the said judges included
and counted in the general result, whereby the said Charles C.
Melvin was illegally and wrongfully returned, and certified as
elected to the office aforesaid, when in fact the said John R. Chad-
wick was duly and legally elected to the said office. * * * That
the place of holding the general elections in the district of Brad-
ford is fixed by law at the school-house in Littleville, and that
the sheriff in his proclamation designated the school-house in Little-
ton as the place for holding the election.    Whereas the election
* * * was held at a place more than half a mile distant therefrom,
to wit, at a school-house on the opposite side of the Tunangwant
creek to the place known as the village of Littleton;" averring
as in the former specifications; and that there were "counted by
the return judges 183 votes for the said Charles C. Melvin, and
114 votes for the said John R. Chadwick, &c. * * * That the
place for holding elections in the district of Hamlin is fixed by
law at the Aldrich school-house, and was so designated by the
sheriff in his proclamation, whereas the said election * * * was
held at a place more than half a mile distant therefrom, to wit, in

[Melvin's Case.]

a vacant house owned by the estate of the late Abel Stanton, deceased;" * * * averring illegality, &c., as in the former specifications, and that there were counted for Melvin 20 votes, and 4 votes for Chadwick, " materially affecting the result of said election." "That at the said election, &c., in the district of Corydon, the board of election failed and neglected to open the polls between the hours of 6 and 7 o'clock, A. M., as by law they are required to do, but * * * did not open the said polls until after the hour of 2 o'clock, P. M., of said day. * * * And further, that at the said election, in the district of Liberty, the returns made by the inspectors and judge of election to the prothonotary of the Court of Common Pleas, were not enclosed in a sealed cover and directed to the said prothonotary as required by law, but were returned in a loose, negligent, fraudulent and illegal manner. Your petitioners therefore aver that by reason of such undue, fraudulent and illegal manner of conducting the said election in said districts of Corydon and Liberty, the votes of said districts ought not to be counted, whereas the officers of the said election did * * * count the same as 196 votes for Melvin, and 65 votes for Chadwick," &c. The petitioners averred for the reasons specified, " the vote in the said districts ought to be rejected and not counted, which would give the said Charles C. Melvin 358 votes, and the said John R. Chadwick 575 votes, for the said office of treasurer."

On the 3d of January 1871, the respondent moved to quash the petition for the following reasons :—

1. The petition does not allege that the matters complained of were committed for the purpose of obtaining or procuring the election of the said Charles C. Melvin to the office of county treasurer, or defeating the said John R. Chadwick contrary to law.

2. The petition does not allege that illegal votes were polled and counted for the said Melvin, or that legal votes were polled for, and not counted for the said Chadwick sufficient to change the result of said election, or that the said Charles C. Melvin did not receive a majority of the legal votes for county treasurer polled at said election.

3. The 4th specification in said complaint alleging irregularities in holding the election in Corydon township, and making return thereof, and the alleged irregularities in making the returns from Liberty township are too general, vague, uncertain and defective in this, that it blends together the votes of the said two districts, thereby preventing the respondent in case of answer, from answering said specifications from the statements therein made.

4. That if all the allegations in said petition are proven to be true, the same are insufficient to change the result of said election.

5. The petitioners do not pray for any relief, decree or order in the premises, or for any time or place of hearing.

March 2d 1871.　The court quashed the petition.

The petitioners took this certiorari, and assigned the quashing the petition for error.

*R. Brown*, for certiorari, cited the Acts of Assembly fixing the places for holding the elections in the district complained of and the general election laws: Juker *v.* Commonwealth, 8 Harris 493. Contested Election of John C. McGhee to Legislature: House Journal of 1856, 204; Contested Election Cases in Philadelphia in 1867, 1 Brews. 162; Skerrett's Case, 2 Pars. 509.

*J. R. Clark*, contrà.—The record of a contested election can only be reviewed upon certiorari,—not the merits: Chase *v.* Miller, 5 Wright 412; Ewing *v.* Filley, 7 Id. 384; Contested Election Cases, 2 Brews. 90. He cited also, on other points, Mann *v.* Cassidy, 1 Id. 26; Skerrett's Case, 2 Pars. 509; Contested Election of 1867, 1 Brews. 173; Stevenson *v.* Lawrance, Id. 132, and cases there cited; People *v.* Cook, 4 Selden (N. Y.) 89; Thompson *v.* Ewing, 1 Brews. 111; Boileau's Case, 2 Pars. 505. Philadelphia Contested Election Cases, 2 Brews. 110; Weaver *v.* Given, 1 Id. 140; Carpenter's Case, 2 Pars. 541; Ewing *v.* Filley, 7 Wright 384; Kneass's Case, 2 Pars. 561.

The opinion of the court was delivered, May 8th 1871, by

THOMPSON, C. J.—We think the court below committed a clear error in quashing the complaint of the requisite number of citizens of McKean county, complaining of an undue election of the respondent as county treasurer at the general election of 1870. It sets forth what is claimed as material violations of the election laws in three districts or townships, giving sufficient majorities to elect respondent over the contestant by an aggregate of 32 votes in the county. The complaint is for holding the elections in these three districts at different places from those established by law and designated in the sheriff's proclamation, to wit, in Wetmore township, the place of holding the annual elections, as fixed by law, was at the house of William Toby in said township; whereas it is alleged it was held at the school-house at Wetmore station, three miles distant, without authority of law, and at which were cast, returned and counted for Charles C. Melvin, respondent, 47 votes, and for the contestant, John R. Chadwick, 4 votes. In Bradford township, the place fixed by law for holding the election and designated by the sheriff's proclamation, was the school-house in the village of Littleville; whereas the election was not held there, but at a school-house more than half a mile distant, across Tunangwant creek, at which place there were cast, returned and counted 183 votes for the respondent, and 114 votes for the contestant. In Hamlin township the election it is alleged was not held at the Aldrich school-house, the

[Melvin's Case.]

place fixed by law and the sheriff's proclamation, but at a vacant house more than half a mile distant, at which were cast, returned and counted for the respondent 20 votes, and for the contestant 4 votes.

The complainants allege that these township returns were illegal, and should not have been counted in the return of the election for treasurer, and which, if not, would leave the aggregate vote of the county, if not otherwise changed by uncounted votes, if any, in favor of the respondent, or by deductions from the contestant, to stand 358 votes in favor of the former, and 575 for the contestant, giving the latter a majority of 271 in the county.

The learned court quashed the petition on motion, because it was not alleged in it that these irregularities were committed for the purpose of advancing the election of the respondent and defeating the complainant. This was not material, we think, or necessary; had it been, the petition might have been amended; it was merely formal. The complaint is of an undue election, and that the respondent was illegally and wrongfully elected, and the contestant duly elected and entitled to the return; this was sufficient to give jurisdiction. Another reason for quashing the petition was that it did not allege that illegal votes were given at these districts enough to change the result of the election. A third was, insufficiency of the complaint in specifying the irregularities complained of in Corydon and Liberty townships. A fourth was, that if all the allegations in the petition were true they are insufficient to change the result of the election; and lastly, that no decree or order has been prayed for in the petition, or time or place fixed for a hearing.

The second and fourth reasons for quashing the appeal seem entirely to ignore, as of no consequence, a compliance with the law fixing the places for holding the election in these districts by acts of the legislature and court, to wit, by the Act of 5th of March 1841, in Bradford township, at the school-house in Littleville; by the Act of 4th of February 1859, at the Aldrich school-house, and in the township of Wetmore by the Court of Quarter Sessions of McKean county, at the house of William Toby. The complaint shows that the election for 1870 was not held at either of the above-mentioned places, but at other and entirely different places, neither fixed by law nor by the action of the court.

The places for holding the general elections in this Commonwealth have always been fixed either directly by the legislature or by the courts under authority given by the legislature, or by a vote of the people under the Act of 20th of April 1854. Hundreds of acts in our statute books fully attest this legislative supervision of the appointment of places for holding gen-

18 P. F. Smith—22

[Melvin's Case.]

eral elections, and it is extended to all possible contingencies which may occur; for instance, where a particular building is designated as the place for holding the elections in a township or district, and is destroyed, changed or altered, so as to be unsuited for the purpose, another place must be assigned by the proper court, subject to the action of the electors under the Act of 1854: see Act of 17th April 1866. Even in case of the existence of a contagious disease's rendering a change necessary, the place for holding the election must in that case be designated by the governor, and notice thereof given by the sheriff at least seven days before the day of the election : see 94th section of the Act 2d July 1839.

Can it therefore be maintained, in view of these provisions of law, that the places fixed for holding elections are merely directory, and may be disregarded by the election officers without any other effect on the poll than that which takes place in all regularly defined districts? We assuredly think not. What is the meaning of the requirement in the Act of 1839, of the notice to be given by the sheriff by proclamation of the time and place of holding the general elections, if not to notify voters where they are to assemble for the purpose of voting? This duty is mandatory upon the sheriff. A fixed place, it seems to me, is as absolutely a requisite according to the election laws as is the time of voting. The holding of elections at the places fixed by law is not directory; it is mandatory and cannot be omitted without error. I will not say that in case of the destruction of a designated building on the eve of an election the election might not be held on the same or contiguous ground as a matter of necessity—*necessitas non habet legem*. But then the necessity must be absolute; discarding all mere ideas of convenience. It is, however, not necessary to adjudicate authoritatively as to this. To move the place of election three miles from that designated by law, or from a village and across a considerable stream a half a mile or more distant from the village, where it ought to have been held, or from a designated school-house to a vacant house more than a half a mile distant therefrom, without authority or any absolutely controlling circumstances, must render the election therein void, and if the votes taken be counted, constitute an undue election. This was decided by a committee of the House of Representatives of this state, in setting aside an election return from Potter county, which gave the seat to the contesting member, Mr. Beck, against the sitting member, Mr. McGhee. The sole ground was that the election had been held at a place not fixed by law in one of the townships in that county, but at another place : House Journal 1856, page 204. This was not a decision by the House in its political character, as suggested, but by a committee in a judicial character. There were one or more distinguished lawyers upon it. Indeed, the election laws are

generally as well understood by laymen in the country, as by lawyers, and it is no argument against that decision that laymen were of the committee.

By the 15th section of the Act of July 1839, the inspectors and judges are required "to meet at their respective places appointed for holding the election in the district to which they respectively belong, before 9 o'clock in the morning of the second Tuesday of October of each and every year," &c. Where is there any authority for meeting elsewhere? I find none. But this was disregarded as to the places fixed in the case in hand, without even an attempt to show an overruling necessity justifying it, if we might concede that that might justify it. It seems to us that if the judges could carry and hold the election in districts half a mile distant from the appointed places, they might carry and hold them three miles, as they did in one district complained of; and if they might go three miles distant, as they did in one district, they might without altering the principle of action in the least, go ten. It would assuredly inaugurate a fruitful source of fraud, and furnish a most fertile field of litigation. We cannot give our assent to any such practice. In Juker v. Commonwealth, 8 Harris 484, it is said that where the law prescribes a time and place for holding a corporation election the officers may not hold the election at another time and place. Without elaborating this point further, we regard the elections held in the districts named as void, for the reasons suggested, and hold that the returns should have been stricken out by the return judges if the facts be as alleged, and so far they are not disputed.

That a whole election district may be stricken out, on showing an entire disregard of conformity to law in holding it, either by design or ignorance, is now well settled: 8 Harris, *supra*. In the minority opinion of this court in the cases of the contested elections of 1868 (2 Brews. 108), referred to in the argument of respondents' counsel for a contrary doctrine from that claimed here misquotes that opinion. It is there said, "I maintain that there is nothing which will justify the striking out of an entire division but an inability to decipher the return, or by showing that not a single legal vote was polled, or *that no election was legally held:*" per Thompson, C. J. The last we hold is what occurred here, to wit, that no election was legally held in the districts mentioned in the complaint of the petitioners. The doctrine of striking out entire divisions was held by the Common Pleas in that case and in Batturs v. Megary, 1 Brews. 162, in which we are referred to a decision in 1859 by Judge Taylor in Blair county to the same effect. In my opinion, however, this ought never to be done where a legal election as to time and place is held, although fraudulent votes shall have been received. The remedy in such

[Melvin's Case.]

a case is to purge the polls by striking out the fraudulent votes if possible.

We need not notice the suggestion that the county treasurer is not within the general election laws requiring time and place to be fixed for the election, as is the case with other offices. This is so obviously erroneous we will not spend time with it.

We think that if the facts be as stated in the petition in regard to Corydon township, viz., that the election was not opened till 2 o'clock P. M. of said day, instead of between 6 and 7 A. M., as required, the return should have been rejected; but I think this complaint is not sufficiently averred, as it is conjoined in its injurious effect to the contestant with Liberty township. It should have been set forth separately. If necessary, this being formal, perhaps might be amended by stating the loss of votes occurring to the contestant in each of these districts. But it is likely that this will not be necessary if the other complaints in the petition be made out. It seems that amendments are allowable in cases of this kind: Contested Election Cases 1868, 2 Brews. 89; opinion of the majority of this court, per Agnew, Justice.

In conclusion, we think the learned court erred in quashing the petition in this case, and that the order to that effect be reversed; and it is now ordered that the same be reinstated on the record, and that the Court of Quarter Sessions of McKean county do proceed to hear, consider and decide this case in accordance with law and the views herein expressed.

Proceedings reversed and ordered to be remitted.