(January 9, 1920.)

## THOMAS E. HARPER, Respondent, v. F. B. DOTSON, Appellant.

[187 Pac. 270.]

ELECTION—ELECTION CONTEST—PLACE OF VOTING—NOTICE—MANNER OF DESIGNATING VOTER'S INTENTION.

1. Where an election law, expressly or in effect, declares a violation of its provisions with regard to the conduct of an election to be fatal to the validity of the election, it must be held to be so.

2. C. S., sec. 510, providing that the county commissioners must not change the place of holding an election in any precinct after their regular July meeting next preceding the election, is mandatory, and has the effect of invalidating an election held in violation of its provisions. If they attempt to change the place of holding an election in violation of such provision, their act is void and the election invalid so far as affected by such order.

3. Where a voter places a cross in the square opposite the blank space on the ballot, and not opposite the name of any candidate, and does not write a name in said blank space, his vote for that particular office is void.

[As to the validity of ballot with respect to place of mark for candidate, see notes in 20 Ann. Cas. 672; Ann. Cas. 1918E, 657.]

[As to irregularities which will avoid elections, see note in 90 Am. St. 49.]

4. Where a voter makes a straight mark, instead of a cross in the square opposite the name of a candidate for a certain office, such mark is sufficient to indicate his intention to vote for that candidate, and where there is no evidence that the voter used the mark in question for the purpose of identifying his ballot, or for any purpose other than that of expressing his intention, his vote should be counted.

[As to the validity of a ballot with respect to the kind of mark for candidate, see note in Ann. Cas. 1918A, 1131.]

[As to distinguishing marks which will invalidate ballots, see note in 49 Am. St. 240.]

APPEAL from the District Court of the Fourth Judicial District, for Cassia County. Hon. Wm. A. Babcock, Judge.

Action to contest election of probate judge.    Judgment for plaintiff.   *Reversed.*

Chas. A. Sunderlin, for Appellant.

Not only was no notice given the electors, and no notices posted of the holding of the election at the Albion Normal School, but, so far as we are advised by the record, there was no publicity given to the fact that there was even an election to be held at the State Normal School.   After notices of election in Albion precinct had been posted that the polling place of the said precinct was to be at the county courthouse, it was then mandatory on the part of the public officials, unless the change was absolutely necessary, as on account of the destruction of the building in which the election should be held, that the election should be held at the place designated in the notices of election and at no other place.   (*People v. Porter,* 6 Cal. 26; *People v. Weller,* 11 Cal. 49, 70 Am. Dec. 754.)

S. T. Lowe, for Respondent.

Where the question is for whom a ballot should be counted, the intention of the voter should, if possible, be ascertained, and when ascertained, it must be counted.   (*McKinnon v. People,* 110 Ill. 305.)

The general rule is that the voter must use a cross of some kind in marking his ballot, and if he fails to do so, his vote will not be counted.   (*Rutledge v. Crawford,* 91 Cal. 526, 25 Am. St. 212, 27 Pac. 779, 13 L. R. A. 761; *Lay v. Parsons,* 104 Cal. 661, 38 Pac. 447; *Lauer v. Estes,* 120 Cal. 652, 53 Pac. 262; *People v. Campbell,* 138 Cal. 11, 70 Pac. 918; *Turner v. Wilson,* 171 Cal. 600, 154 Pac. 2; *Riley v. Trainor,* 57 Colo. 155, 140 Pac. 469; *Parker v. Orr,* 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227; *Hodgson v. Knoblauch,* 268 Ill. 315, Ann. Cas. 1917E, 653, 109 N. E. 338; *Murray v. Waite,* 113 Me. 485, Ann. Cas. 1918A, 1128, and exhaustive note in 94 Atl. 943.)

An irregularity such as the changing of the place regularly appointed for the holding of an election will not render the election invalid when the change is made in good faith, and

no one is misled thereby so as to be deprived of his vote. (*Bordwell v. State,* 77 Ark. 161, 91 S. W. 555; *Preston v. Culbertson,* 58 Cal. 198; *Hayes v. Kirkwood,* 136 Cal. 396, 69 Pac. 30; *Laird v. Boothe,* 22 Cal. App. 569, 135 Pac. 703; *State v. Mayor etc. of City of Blue Ridge,* 113 Ga. 646, 38 S. E. 977; *State v. Shanks,* 25 S. D. 55, 125 N. W. 122.)

Notice is not a condition precedent to the holding of a valid election. The right to hold the election comes from the statute, and not from the official notice. (Cooley's Constitutional Limitations, 759; *Wilson v. Brown,* 109 Ky. 229, 58 S. W. 595; *Dishon v. Smith,* 10 Iowa, 212; *State v. Gorin,* 6 Nev. 276.)

Changing of polling place by reason of necessity will not invalidate an election where proper notice of such change has been given and no one has been deprived of his vote on this account. (*Anderson v. Likens,* 104 Ky. 699, 47 S. W. 867.)

The unauthorized establishment of two polling places in an election precinct, instead of only one, will not invalidate an election where no prejudice results to the defeated candidate by reason of such irregularity. (*Bowers v. Smith,* 111 Mo. 45, 33 Am. St. 491, 20 S. W. 101, 16 L. R. A. 754; *Ex parte Williams,* 35 Tex. Cr. 75, 31 S. W. 653; *Stemper v. Higgins,* 38 Minn. 222, 37 N. W. 95; *Kerlin v. City of Devils Lake,* 25 N. D. 207, Ann. Cas. 1915C, 624, 141 N. W. 756.)

Mere irregularities in conducting an election which do not defeat or tend to defeat an expression of the popular will at the polls will not so operate as to vitiate the election. (*State v. Wilcox,* 11 N. D. 329, 91 N. W. 955.) The will of the majority is to be respected even when irregularly expressed. (McCrary on Elections, sec. 228.)

McCARTHY, District Judge.—On Nov. 5, 1918, a general election was held in Cassia county, Idaho. Appellant Dotson was candidate for probate judge of said county on the Democratic ticket and respondent Harper on the Republican ticket. The county board of canvassers declared the appellant elected by a vote of 1,632 for him to 1,628 for respondent. Respondent instituted a contest of such election in the district court

for Cassia county. Appellant answered, denying the material allegations of the complaint, and setting up facts which he claimed entitled him to affirmative relief. The district court ordered the ballot-boxes for certain precincts opened, and the ballots recounted; found that in the county appellant received 1,640 and respondent 1,651 votes, and decided the contest in favor of respondent, declaring him elected to said office. From said judgment an appeal is taken to this court.

We will first consider specifications of error Nos. 15, 16 and 17, which deal with the action of the district court in declaring the election held at the Albion State Normal School, Albion precinct, valid, and counting the votes there cast, the validity of said election and the propriety of counting said votes being an issue under the pleadings.

At the regular meeting of the board of county commissioners, in July preceding the election, the voting precinct of Albion was created and the polling place designated at the courthouse in said town. This precinct included the voters residing at the State Normal School. In November, those residing at the normal school were quarantined within the campus limits because of the influenza epidemic then raging. On Nov. 4th, the day before the election, and long after the adjournment of the July term of the board of commissioners, and at a time when the board of commissioners was sitting as a board of equalization, certain members of the faculty and students petitioned the board of commissioners to appoint a polling place and a separate set of election judges at such school. The board granted said request, and ordered that the privilege of voting be extended to Albion State Normal School members and faculty, under the direction of the following specially appointed and authorized judges, to wit: J. E. Werner, Miss Caroline Jackson and Miss Margaret Jeffrey, and that the registrar of Albion be called upon and that he prepare a separate list of registered voters quarantined within the State Normal precinct and cancel said names from the regular polling list to be used in Albion precinct proper.

C. S., sec. 510, provides as follows:

"The board [of commissioners] may from time to time, change the boundaries of, create new or consolidate established precincts, but they must not alter or change any election precinct or change the place of holding election in any precinct after their regular July meeting next preceding any election: Provided, that the precincts established and the places designated in which to hold elections at the time of the taking effect of this chapter shall so remain until changed."

C. S., sec. 584, provides as follows:

"Whenever it shall become impossible or inconvenient to hold an election at the place designated therefor, the judges of election, after having assembled as near as practicable to such place, and before receiving any vote, may adjourn to the nearest convenient place for holding the election, and at such adjourned place forthwith proceed with the election."

We find the general rule to be that if an election law expressly or in effect declares a failure to comply with certain of its provisions with regard to the conduct of the election to be fatal to the validity of the election, it must be held to be so. If an election law does not expressly or in effect declare a failure to comply with certain of its provisions with regard to the conduct of the election to be fatal to the validity of the election, it must not be held to be fatal unless it appears that such failure probably affected the result of the election by preventing qualified electors from voting, or permitting disqualified electors to vote, or by rendering doubtful the evidence from which the result was declared. (Cooley's Constitutional Limitations, 7th ed., p. 928; McCrary on Elections, 4th ed., sec. 176; *State v. Shanks*, 25 S. D. 55, 125 N. W. 122; *Bowers v. Smith*, 111 Mo. 45, 33 Am. St. 491, 20 S. W. 101, 16 L. R. A. 754; *Stemper v. Higgins*, 38 Minn. 222, 37 N. W. 95.)

It must be conceded that the place of holding an election, and giving notice thereof, are matters of importance. The language of our statute, C. S., sec. 510, *supra,* to the effect that the board of commissioners must not alter or change any election precinct, or change the place of holding the election in any precinct, after their regular July meeting next pre-

ceding any election, is clearly mandatory. We construe it to mean that the act of the commissioners in designating a second voting place in Albion precinct, after their July meeting, was void and rendered the election held at said place void. The validity of the election at the school depends upon the validity of the commissioners' order of Nov. 4th, which we hold to be void. Many cases are cited in respondent's brief to the effect that changing the place of an election in violation of the directory provisions of a statute is not fatal to the election; but the provisions of section 510, *supra*, are not directory, but mandatory and prohibitory. Since the statute expressly provides that the thing which was done shall not be done, we conclude the violation renders the election invalid. The only reasonable construction we can place on section 510 is that an election held in violation of its express prohibitory terms is invalid.

There is no evidence in the record to the effect that notice was given of the election at the school. The order of the commissioners does not prescribe that such a notice be given. The only fair presumption is that none was given. There is no evidence to show that the voters quarantined had any notice or knowledge of the election at the school. All we know from this record is that certain persons, quarantined at the school, asked the commissioners to make an order, and certain persons quarantined at the school voted. The quarantine in effect at the school made the pretended election a private one. The canvass of the votes could not be public as required by law, and there could be no opportunity to exercise the right of challenge. The usual presumptions as to regularity and performance of duty which attend the acts of duly elected or appointed officers do not arise, for the reason that the pretended election officers were not duly appointed. . They were neither *de jure* nor *de facto* officers. The whole affair seems to have been a special dispensation granted certain individuals in violation of the statutes. We cannot hold that such a proceeding was a legal election, and conclude that the pretended election held at the school was invalid and the votes there cast should not have been counted. Fifteen votes were cast for respondent at

the school, and four for appellant. Therefore, fifteen should be deducted from the total vote of 1,651 accredited to respondent by the findings of the court, and four from the total vote of 1,640 accredited to appellant. This would make the vote a tie.

We now turn to specifications of error Nos. 10, 11, 12, 13 and 14, with reference to alleged errors of the trial court in counting for respondent ballots introduced in evidence as plaintiff's exhibits "N," "S," "U" and "V," and refusing to count for appellant the ballot introduced in evidence as defendant's exhibit "6."

On the four ballots first above mentioned no cross or other mark was placed in the square opposite respondent's name, or opposite appellant's name, but crosses were placed in the square opposite the blank space below the printed names, this space being left to enable a voter to write in a name if he desired to vote for someone whose name was not printed on the ballot. Appellant's name was first, respondent's name next, and the blank space below the name of respondent. The crosses were in the square opposite the blank space, and were not opposite respondent's name. The court, nevertheless, counted these four ballots for respondent. Counsel for respondent says this was done on the theory that it was clearly the voters' intention to vote for the candidate whose name was nearest the cross. With this theory we cannot agree, nor can we conceive of any other theory warranting the conclusion that these ballots should be counted for respondent. The matter of the intention of these voters is one of pure conjecture. C. S., sec. 624, provides that any ballot, or part of a ballot, from which it is impossible to determine the elector's choice, shall be void and shall not be counted, provided, that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges to count such part. We think it was impossible to determine the electors' choice or intention from these ballots; that they are void and should not be counted so far as said office is con-

cerned. Therefore, four more votes should be deducted from the total accredited to respondent by the findings of the court.

Defendant's exhibit "6" is a ballot on which the voter placed a straight mark instead of a cross in the square opposite appellant's name. The court refused to count this for appellant. Respondent's counsel defends this ruling upon the ground that the voter should have used a cross as provided by statute. He cites some authorities in support of his contention, most of which are California cases which hold that a ballot bearing a mark other than a cross is void, under a statute making a ballot void which bears a mark placed upon it by the voter as a means of identifying the particular ballot. We have no such statute. If it be contended that a mark placed upon a ballot by a voter for the purpose of identifying the ballot makes the ballot void in the absence of a specific statute, a sufficient answer in this case is that there is no evidence that the voter used the mark in question for the purpose of identifying his ballot, or for any purpose other than that of expressing his intention: (*McGrane v. County of Nez Perce,* 18 Ida. 714, Ann. Cas. 1912A, 165, 112 Pac. 312, 32 L. R. A., N. S., 730.) We think the voter made his intention plain to vote for appellant, and that his intention is not to be defeated by the fact that he did not use the precise mark mentioned in the statute. We therefore conclude that defendant's exhibit "6" should have been counted for appellant.

To sum up, we find that the district court counted nineteen ballots for respondent which should not have been counted for him; counted four ballots for appellant which should not have been counted for him, and refused to count one ballot for appellant which should have been counted for him. It follows that the district court should have counted 1,632 votes for respondent, instead of 1,651, and 1,637 for appellant, instead of 1,640. Thus appellant received a larger number of legal votes, and should have been declared the legally elected probate judge of Cassia county.

The above conclusions are decisive of the case, and make it unnecessary to pass upon any of the other questions raised.

The judgment is reversed and the cause remanded, with directions to enter judgment in accordance with the views and conclusions herein expressed. Costs awarded to appellant.

Rice and Budge, JJ., concur.

Petition for rehearing denied.