## SEMKE v. WILES.

No. 14921—Opinion Filed Feb. 19, 1924.

(Syllabus.)

1. **Elections—Polling Place—Statutory Requirements.**

The statutory provisions as to the place of holding the election, and the manner of changing the voting place, are mandatory upon the officers charged with that duty, and will be strictly enforced in a direct action instituted before an election, but after the election such statutory requirements are directory, unless it appears that the failure to hold the election at the regular place resulted in fraud and prevented the voters from a full and free expression of their will at the election.

2. **Same — Change of Voting Place—Sufficiency of Notice—Harmless Irregularity.**

The county election board of Garfield county in August, 1922, agreed to change the voting place in Olive township from Duff schoolhouse to Fairhaven schoolhouse. No notice of the change was posted at the courthouse door as required by law, but four notices were posted in the township 23 days before the election, one on the door of the Duff schoolhouse and one on the door of the Fairhaven schoolhouse, and the other two at other places in the precinct, stating the election would be held at the Fairhaven schoolhouse. The election was held at said Fairhaven schoolhouse, where a large vote was polled, and the record disclosed there was no evidence of fraud, and failed to disclose that any one was deprived of the right to vote by reason of said change. Held, the trial court erred in throwing out the entire votes of said precinct and thereby disenfranchising the voters of said precinct.

Error from District Court, Garfield County: J. C. Roberts, Judge.

Action by Frank V. Wiles against H. H. Semke. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

W. J. Otjen and Geo. W. Buckner, for plaintiff in error.

H. J. Sturgis and McKeever, Moore & Elam, for defendant in error.

McNEILL, J. This action was commenced in the district court of Garfield county by Frank V. Wiles to contest the election of H. H. Semke as county commissioner. The tabulation of the votes by the election board disclosed Semke received 1,467 votes, and Wiles 1,444 votes, and the certificate of election was issued to Semke. Upon the trial of the case, the trial court counted all the ballots and declared Semke had received 1,472 votes and Wiles received 1,453 votes. The court then threw out all the ballots cast in Olive precinct, wherein Semke received 113 votes and Wiles 69 votes. The reason assigned for throwing out said ballots was that the voting place in Olive precinct had been changed by the county election board, but the notices of the change had not been posted 30 days as required by law. The court found there was no evidence that fraud was intended by making the change, and the vote cast at said election was unusually large. The court by throwing out the entire vote in the Olive precinct declared Wiles elected, and removed Semke. To reverse the judgment of said court, this appeal is prosecuted.

The facts regarding the change of voting place are practically undisputed. Mr. Jacobs, secretary of the county election board, testified he had not made a minute of any change in the minute books of the county election board, showing the change of the voting place from Duff schoolhouse to the Fairhaven schoolhouse, but on August 24th, that he and Mr. Sowles, the Republican member of the board, went to the east part of the county and changed several voting precincts, and while on that trip changed the voting place in Olive township. The records of the election board are as follows:

"8-29-22. Board met pursuant to adjournment, members present, Sowle and Jacobs, met for the purpose of going to Otter, Lincoln, and Olive townships to see about dividing said precincts for voting purposes. On motion, the board now adjourns to meet 9-2-22. J. S. Jacobs, Scty." "9-2-22. Board met pursuant to adjournment, members present, Walker, Sowle and Jacobs for the purpose of erecting new precincts in Garfield county, Oklahoma, as follows, Logan, Waukomis, Otter township and the city of Enid."

He further testified as follows:

"Yes, sir; we was in session all that day and after we came back to the office, and Mr. Sowle and I talked the matter over as to the divisions of Otter township and moving the precinct in Olive township, and also Lincoln township, we had that under

consideration, and when we got back we determined not to divide Lincoln township because that is Mr. Walker's own precinct, and he is out of town, but that same date when he came back in the evening the division of Otter township and the moving of the voting place in Olive township was determined on and one. * * *"

Mr. Sowle's testimony corroborated that of Mr. Jacobs. He testified that he and Mr. Jacobs had gone to Olive township and changed the voting place from the Duff schoolhouse to the Fairhaven schoolhouse for the reason they thought it would be convenient for more people in voting. That the change was not made in the interest of any candidate or with the intention of injuring any candidate. The evidence disclosed that no notice was posted of the change at the courthouse. The record disclosed that the following notice was posted:

"Notice. To the voters of Olive township, Garfield county, state of Oklahoma. Notice is hereby given that the voting place for said township is hereby changed from Duff schoolhouse, district 50, to Fairhaven schoolhouse, district 51, by order of county election board. J. S. Jacobs. Dated October, 16, 1922."

The above notice was posted on October 15, 1922, one on the door of the Duff schoolhouse, one on the door of Fairhaven schoolhouse, and two other notices in other places in the county. It is admitted that the notices were not printed, but written in long hand, and written by Mr. Gilpon, the election inspector of said precinct, and Mr. Semke, and they signed Mr. Jacobs' name to the notices, with Jacobs' consent and permission. In accordance with the above notices, the election was held at Fairhaven schoolhouse.

The only question briefed on appeal is whether the court erred in a matter of law in throwing out the entire vote of Olive precinct and thereby disenfranchising the voters of that precinct. It is contended by the defendant in error that under and by virtue of the latter portion of section 6134, Comp. Stat. 1921, which reads as follows:

"Provided, that no such change, division, or consolidation shall be valid without first giving due notice of at least one month by printed notices posted, one at the courthouse door and at least three on conspicuous places in the precincts affected; and provided, further, that no precinct shall be enlarged so as to contain more than two hundred and fifty voters. If such board shall fail to act as herein directed, any qualified elector of the county may apply for a writ of mandamus to compel the performance of this duty"

—that the change of the voting place was invalid because no notice of the change was posted at the courthouse door, and the notices in the precinct were posted only 23 days prior to the election instead of 30 as required by said statute, and the change of the voting precinct being invalid, it then follows that the election was not held at the regular voting place in said precinct, and the election in that precinct is void. Plaintiff in error contends that the above section of the statute was repealed and section 6298, Comp. Stat. 1921, controlled. Whether the statute was repealed or not, we think, is immaterial. Let us concede that section 6134, supra, is in full force and effect, and under that section the change of the voting place in the precinct was invalid because of insufficient notices being posted. This, however, we do not think is sufficient to hold the election void in that precinct. The cases upon this question are not unanimous, although practically all the later decisions of the various states are unanimous in holding the mere change of voting place will not render the election invalid, in the absence of fraud and where no person was deprived of his vote by virtue of said change. The cases upon both sides of this question are annotated in the note in American & English Annotated Cases, vol. 17, page 1090. The first rule announced in the note is stated as follows:

"Numerous cases support the rule that statutes relative to the place of holding an election are mandatory, and that an election held at any other than the designated place is absolutely void even in the absence of proof of any fraud or resulting injury."

We will refer to the cases cited to support this contention. The first case cited is Johnstone v. Robertson, 8 Ariz. 361, 76 Pac. 465. This case, however, is practically overruled by a later decision in the case of Chenoweth v. Earhart (Ariz.) 127 Pac. 748, wherein the court in the 6th paragraph of the syllabus stated as follows:

"Whether statutes relating to time and place of elections are to be considered mandatory or directory, a departure therefrom will invalidate the election only when it makes it impossible or very difficult to determine whether fraud was committed or anything done which would affect the result."

In the body of the opinion, the court stated:

"Appellant cites a number of California cases holding that time and place are of the substance of every election, and that the provisions of the statute relating to time and place are mandatory (citing California cases). But a careful examination of those cases will disclose the fact to be that in many of them, in addition to hold-

ing the election in the place not designated. or opening the polls too late, or closing them too early, there was malconduct upon the part of the election board from which fraud and injury were actually shown or presumed."

The case of Walker v. Sanford, 78 Ga. 165, 1 S. E. 424, is cited. In that case the court in the first paragraph of the syllabus stated the statute provided the officers holding elections should be freeholders, and held, where an election was held by persons not freeholders, the election was void. The second paragraph of the syllabus announced the broad rule that an election held at a place other than that designated was absolutely void. The Supreme Court of Georgia in the case of State v. Mayor and Council of Blue Ridge, 113 Ga. 69, in referring to the case of Walker v. Sanford, stated that case was decided by only two judges and the case of Walker v. Sanford would not be followed. The only question involved in the last case related to the question of whether the election was void because the officers holding the election were not freeholders.

The case of Chamberlain v. Inhabitants of Dover, 13 Me. 466, is also cited. This case involves a town meeting, and the record disclosed that fraud was practiced at this meeting and many parties were deprived of the right to vote.

The case of Ward v. Sikes, 61 Miss. 649, also disclosed there was fraud, and the 4th paragraph of the syllabus of the case is as follows:

"Where some of the electors withdraw from the regular voting places on account of alleged frauds and establish for themselves boxes at which the voting is fairly, openly, and honestly conducted, the commissioners of election may reject the return from such boxes. Whether the votes cast at the regular voting places should be counted depends upon the proof as to actual frauds committed there."

The case of Miller et al. v. English et al., 21 N. J. Law, 317, is also cited. The election in that case did not involve an election for officers, but simply involved the election of trustees of a religious society incorporated under the laws of New Jersey. The Supreme Court of New Jersey, however, in a later decision, Lane v. Otis, 68 N. J. Law, 656, 54 Atl. 442, where the polling place was outside the election district, and the law required the place to be within the voting district, stated as follows:

"The right of suffrage is too sacred to be defeated by an act for which the voter is in no way responsible, unless by the direct mandate of a valid statute, no other construction can be given. There is nothing in our election law which requires the rejection of votes honestly cast and counted in a case like the one before us."

The case of Elvick v. Grove (N. D.) 118 N. W. 228, is also cited. While this case was not overruled by the Supreme Court of North Dakota, in the case of Kerlin v. City of Devils Lake (N. D.) 141 N. W. 756, the court, however, distinguished the case and cited with approval the case of Lane v. Otis, 68 N. J. Law, 656, 54 Atl. 442.

In re Melvin's Case, 68 Pa. St. 333, is also cited. There was fraud in that case. The Supreme Court of Pennsylvania in a recent case, Fish's Election, 273 Pa. St. 410, on page 414, stated as follows:

"In Melvin's Case, 68 Pa. 333, it was decided that where an election was held at three houses, which were from half a mile to three miles from the proper polling places, the total vote in those election districts should be discarded. This was manifestly correct, since it was not known how many of the electors had gone to the proper places and had lost their right to vote because the polls were not there; and though we said 'a whole election district may be stricken out, on showing an entire disregard of conformity to law in holding it, either by design or ignorance,' we took care to add (page 339) 'there is nothing which will justify the striking out of an entire division but an inability to decipher the return, or by showing that not a single legal vote was polled, or that no election was legally held.' This conclusion is perhaps too broadly stated, but it suffices to show how slowly the courts move when asked to reject an entire poll."

The case of Williams v. Potter, 114 Ill. 628, 3 N. E. 729, is also cited. This case does support the rule announced, although there are many additional questions involved in the case. In a later case the Illinois court cited in the case of Snowball v. People ex rel. Groupe, 35 N. E. 568, which was a school election case, where persons voted in town, and those outside of town voted at a certain place outside of town which had not been designated by the proper officers and had not been mentioned in the notice of election, the court rejected all the ballots cast at the place outside of the town that had not been designated nor included in the notice. That case is distinguished from the one at bar, because in the instant case the notice fixed the voting place.

The case of Heyfron v. Mahoney (Mont.) 24 Pac. 93, is also cited. In that case there was fraud in the election. The above are all the cases cited to support the rule an-

nounced. A late decision is cited in the brief, to wit, Harper v. Dotson (Idaho) 187 Pac. 270. In that case the board of county commissioners, the day before the election, attempted to create a voting precinct at a college where smallpox prevailed, and the court rejected the votes cast in that place. In the opinion, the court used this language:

"The quarantine in effect at the school made the pretended election a private one. The canvass of the votes could not be public as required by law, and there could be no opportunity to exercise the right of challenge. The usual presumptions as to regularity and performance of duty which attend the acts of duly elected or appointed officers do not arise, for the reason that the pretended election officers were not duly appointed. They were neither de jure nor de facto officers. The whole affair seems to have been a special dispensation granted certain individuals in violation of the statutes."

The Supreme Court of Idaho in a later decision, to wit, Sizemore et al. v. Board of Com'rs of Jerome County, 210 Pac. 137, stated:

"In cases of elections, if the statute simply provides that certain acts or things shall be done at a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election."

An examination of the cases cited to support the rule announced discloses that in none of those cases was an election ever declared invalid under facts similar to the one at bar. In fact, none of the latter decisions support the broad rule announced that an election held at a place other than at the regular place is void, in the absence of fraud or other resulting injury.

In the case of Goree v. Cahill, 35 Okla. 42, 128 Pac. 125, this court in the syllabus stated that the requirements of the law relative to holding elections are generally mandatory and elections held at any other place than the designated place are void. The facts in that case disclosed the election was called at a certain schoolhouse where it was asserted there were 133 voters in the precinct, and some parties met at a private house and held an election and 13 ballots were cast, and the court in the body of the opinion stated:

"Without noticing the other grounds on which it is claimed it ought to be held void, it is sufficient for us to say that the holding of this election at a place other than the regular voting place of the village and

at a private residence, which is not shown to have been in proximity to the council house, where no proclamation was posted, is sufficient to render it void."

The cases of this court which, while not exactly in point, hold that the ballot should not be thrown out, in the absence of fraud, or some other irregularity that affected the result of the election, are as follows: Martin v. McCarr, 27 Okla. 653, 117 Pac. 323; Mayberry v. Gaddis, 88 Okla. 286, 213 Pac. 316; Town of Groves v. Haskell, 24 Okla. 707, 104 Pac. 56; Lamb v. Palmer, 79 Okla. 68, 191 Pac. 194; Wallace v. Excise Board of Bryan County, 91 Okla. 101, 216 Pac. 654.

The other rule announced in note in 17 American & English Annotated Cases, page 1091, is as follows:

"In the reported case the rule that a mere change of the voting place tenders the election invalid is rejected, and it is held that when it affirmatively appears that the change was made in good faith, without fraud, and without any intention or purpose to injure the candidates, and that no person was deprived of his vote, such an irregularity will not render the election invalid. A number of courts have recognized this rule."

The earlier cases supporting this theory are annotated in the case of Whitcomb v. Chase, 83 Neb. 360, 119 N. W. 673; 17 American & English Annotated Cases, 1088. A few of the other cases supporting this rule are Jones v. State (Ind.) 55 N. E. 229; Smith v. Hackett, 129 Md. 73, 98 Atl. 141; Farrington v. Turner (Mich.) 18 N. W. 544; State v. Shank, 125 N. W. 122.

We think the general rule may be stated: The statutory provisions as to the place of holding the election and the manner of changing the voting places are mandatory upon the officers charged with that duty, and will be strictly enforced in a direct action instituted before an election, but after an election such statutory requirements are directory, unless it appears that the failure to hold election at the place resulted in fraud and prevented the electors from giving a full and free expression of their will at the election, unless the statute contains a special provision that the failure to hold the election at the designated place renders it void.

For the reasons stated, the judgment of the trial court is reversed and remanded, with directions to the trial court to dismiss plaintiff's petition.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.