THOMAS COLEMAN V. SPEARMAN, SNODGRASS & COMPANY.

FILED FEBRUARY 17, 1903.    No. 12,556.

1. **Appeal: TRANSCRIPT: WAIVER.** Although the filing of a duly authenticated transcript is required in order to perfect an appeal from the county court to the district court, and although the transcript filed for such purpose is not thus authenticated, yet, if the parties proceed in the district court on the theory that the appeal has been perfected, they will not be heard to question the sufficiency of such transcript in this court.

2. **Appeal: ISSUES.** Where, in an appeal from the judgment of the county court, in a term case, the petition filed in the district court is assailed on the ground that it tenders other and different issues than those tendered in the court below, the question of fact, raised by such motion, is determinable solely by a comparison of the petition filed in the district court with that upon which the cause was submitted to the county court.

3. ——: ——. The rule requiring cases on appeal to be tried on the same issues as those upon which they were tried in the court below, does not require that the petition filed in the appellate court be in the precise language of that filed in the lower court, but is satisfied if the ultimate facts relied upon for a recovery are substantially the same, and provable by evidence of the same character.

4. **Petition.** Petition filed in the county court examined, and *held* to state a cause of action.

ERROR to the district court for Sarpy county: BENJAMIN S. BAKER, DISTRICT JUDGE. *Reversed.*

*John P. Breen,* for plaintiff in error.

*Carl Wright* and *John F. Stout, contra.*

ALBERT, C.

This action was commenced in the county court for Sarpy county. The petition in that court was as follows:

"Comes now the plaintiff and files his petition in words and figures following, to wit:

"Comes now. the above named plaintiff and complains of the defendants and for cause of action does allege:

"First. That said defendant is a copartnership, duly chartered and authorized by law of this state to do a general banking business in Gretna, Nebraska, and were on or about the 8th day of March, 1896, doing a general banking business at said place. That part of the usual and ordinary business of said defendants, at the date aforesaid, was to receive notes and other negotiable papers for collection for hire, and so advertised and conducted said collections as a part of the business of said bank.

"Second. This plaintiff further alleges that on the date above and for some time prior thereto he was the owner and holder of three promissory notes, of which the following are copies:

"GRETNA, NEB., July 18, 1895.    $152.57.

"December 15 after date we or either of us promise to pay to Langdon Bros., or order, One Hundred Fifty-two and 57-100 Dollars, value received, payable at Spearman, Snodgrass & Co., Gretna, Nebraska, with interest at the rate of ten per cent. per annum from date until paid.

"P. O. Gretna, Neb.              JOHN H. WELCH.
"Due Dec. 15, 1895.

"GRETNA, NEB., July 18, 1895.    $145.00.

"Dec. 15 after date we or either of us promise to pay to Langdon Bros., or order, One Hundred Forty-five and no-100 Dollars, for value received, payable at Spearman, Snodgrass & Co., Gretna, Nebraska, with interest at the rate of ten per cent. per annum from date until paid.

"P. O. Gretna, Neb.        WILLIAM (X) BAILEY.
                                       his
                                       mark
"H. MERRYMAN, witness to mark.
"Due Dec. 15, '95          JOHN H. WELCH.

"GRETNA, NEB., July 18, 1895.   $116.31.

"Dec. 15 after date we or either of us promise to pay Langdon Bros., or order, One Hundred Sixteen and 31-100 Dollars, value received, payable at Spearman, Snodgrass & Co., Gretna, Nebraska, with interest at the rate of ten per cent. per annum from date until paid.

"P. O. Gretna, Neb.          JAMES H. HAGANS.
"Due Dec. 15, '95.          JOHN H. WELCH.

"That the above notes were duly indorsed by the said Langdon Bros. to this plaintiff without recourse for value.

"Third.   This plaintiff further alleges that said notes were purchased by him on the fact that John H. Welch was the party out of whom he expected to collect said notes.   The other makers thereon were wholly insolvent and without property.   That at the time said notes were transferred to this plaintiff the said John H. Welch had sufficient property out of which the notes aforesaid would be collected.

"Fourth.   This plaintiff further alleges that some time prior to the 8th day of March, 1896, he left said notes with the above defendants for collection and said defendants accepted and received the same for said purpose and under the collection thereof for him.   That on the 8th day of March, 1896, this plaintiff instructed, requested and notified said defendant that he wanted said notes collected or secured as he was at that time a little doubtful about the solvency of the said John H. Welch, and he knew that if the defendant would press and insist the said John H. Welch would secure same; this defendant promised and agreed with the plaintiff that he would attend to said matter and endeavor to have said notes secured; that at the time this defendant agreed and promised to attend to said matter and for a long time thereafter the said John H. Welch had ample property with which he could have secured the payment of said notes and the said John H. Welch would have secured the same had he been requested and asked so to do, but this defendant neglected and failed

to make any effort towards getting said notes secured as he had promised and had failed and neglected to ask the said John H. Welch to pay or secure said notes or any of them for payment or security while the said Welch had property by which said notes could have been secured; that after the said John H. Welch was securing other of his creditors, including this defendant, this defendant neglected and failed to present these notes to said Welch for payment or security until all of the property of the said Welch was incumbered, and had this defendant used due diligence and ordinary care he would have had said notes secured and their payment assured.

"Fifth. This plaintiff further alleges, that by reason of the negligence, carelessness and want of ordinary business care he had lost the amount of these notes to his damage in the sum of $450.

"The plaintiff therefore prays judgment against said defendant for the sum of $450 and interest thereon at ten per cent. from March 8, 1896, and costs of suit."

The issues were made up, and, on a trial thereof, the county court found for the plaintiff and gave judgment accordingly. The defendants appealed to the district court. The final petition filed by the plaintiff in the district court was as follows:

"For an amended petition herein the plaintiff for his cause of action says:

"First. That said defendant is and was on the 8th day of March, 1896, and for some time prior thereto, a co-partnership engaged in a general banking business at the town of Gretna, Sarpy county, Nebraska. A part of its said banking business then carried on was the taking and receiving of notes, drafts, bills and other evidences of indebtedness, for collection, and it solicited and advertised for such collections as part of its general business.

"Second. That on the said 8th day of March, 1896, and for some time prior thereto, this plaintiff was the owner and holder of three promissory notes, copies of which are as follows, to wit:

"GRETNA, NEB., July 18, 1895. $152.37.

"December 15 after date we or either of us promise to pay to Langdon Bros., or order, One Hundred Fifty-two and 37-100 Dollars, for value received, payable at Spearman, Snodgrass & Co., Gretna, Nebraska, with interest at the rate of ten per cent. per annum from date until paid.

"P. O. Gretna, Neb.                JOHN H. WELCH.

"Due December 15, 1895.

"GRETNA, NEB., July 18, 1895. $145.

"Dec. 15 after date we or either of us promise to pay to Langdon Bros., or order, One Hundred Forty-five and no-100 Dollars, for value received, payable at Spearman, Snodgrass & Co., Gretna, Nebraska, with interest at the rate of ten per cent. per annum from date until paid.

"P. O. Gretna, Neb.         WILLIAM (X) BAILEY.
                                          his
                                          mark

"Due Dec. 15, 1895.         JOHN H. WELCH.

"GRETNA, NEB., July 18, 1895. $116.31.

"Dec. 15 after date we or either of us promise to pay to Langdon Bros., or order, One Hundred Sixteen and 31-100 Dollars, for value received, payable at Spearman, Snodgrass & Co., Gretna, Nebraska, with interest at the rate of ten per cent. per annum from date until paid.

"P. O. Gretna, Neb.         JAMES B. HAGANS.

"Due Dec. 15, 1895.         JOHN H. WELCH.

"That plaintiff purchased said notes from the payees thereof, said Langdon Bros., for a valuable consideration and that said Langdon Brothers indorsed the said notes at the time of the transfer to the plaintiff, but without recourse, on them.

"Third. That said notes were purchased by plaintiff with the belief and understanding that one of the makers, John H. Welch, was financially responsible and able to pay the said notes when due, and alleges the facts to be that said John H. Welch then was, and for a long time

thereafter, the owner of valuable property both real and personal, and was financially able to meet the payment of said notes; but that the other makers of the notes were irresponsible financially and without property and were insolvent then and thereafter.

"Fourth. That some time prior to the said 8th day of March, 1896, plaintiff delivered the above described notes to this defendant for collection and that the defendant received and accepted the same and undertook and agreed for hire, to make collection of them from the makers and especially from the said John H. Welch; that on the said 8th day of March, 1896, the report having come to this plaintiff that said Welch was and was becoming financially embarrassed and involved in financial distress and difficulties, he (the plaintiff) especially notified defendant of this report, and again instructed the defendant to be alert and diligent in the proceeding with the collection of said notes and to get them secured or paid at once, and stated to the defendant then that reports had reached him, plaintiff, that said Welch was becoming financially embarrassed and that diligence must be pursued in seeking the collection of said notes and that if defendant would insist upon and press the said Welch for the payment of said notes or for security for their payment, that, no doubt, Welch would either pay or secure them; that the defendant promised to attend to the matter of the collection of said notes at once.

"Fifth. That at the time defendant made this last named promise and for nearly two months thereafter, the said John H. Welch was the owner of ample and sufficient property, both real and personal, to meet the payment of said notes or to have secured the payment of them and had the defendant then asked for and insisted upon the payment of said notes, Welch would have paid or secured the payment of said notes, but defendant failed and neglected to make any effort whatever to have said notes or their payment secured and failed and neglected, while the said Welch had unincumbered property with which he could

3

have secured the payment of said notes, to even ask the said Welch for the payment or the securing of the payment of said notes, and failed, and neglected to ask for and insist upon the payment or the securing of the payment of said notes until the said Welch had lost and incumbered his property so as to be and become insolvent and unable to either pay or secure the payment of said notes and that at all times since and still the said Welch has remained insolvent and unable to pay said notes or secure the payment thereof and has no property or means out of which the payment of said notes could be enforced and the said Welch has wholly failed to pay said notes or any part thereof; that for nearly two months after said defendant received the said special instructions to take immediate steps to make demand upon the said Welch, for payment of said notes and to take immediate steps to secure the payment of them, the said defendant neglected to make any attempt to get said notes either paid or secured although said defendant, during said time, well knew that said Welch was securing other creditors and other claims and demands including claims of the defendants themselves, and that notwithstanding this the said defendants made no effort to have plaintiff's ·claim either paid or secured; and had defendants exercised ordinary care, due diligence and business prudence, during the time said Welch's property was unincumbered they could have secured either the payment or security for the payment of plaintiff's said notes; but that by reason of defendants' failure and neglect to present said notes to said Welch and demand payment and ask for, insist upon and press their collection, the plaintiff lost the full amount of said notes, to his damage in the sum of $450 together with interest thereon.

"Wherefore the plaintiff prays judgment against the defendant for the sum of $450 and interest thereon at ten per cent. from the 8th day of March, 1896, and costs of suit."

The defendants filed a motion, asking that the **foregoing**

petition be stricken from the files. The grounds of the
motion are, in substance: (1) That the amended petition
tenders other and different issues than those upon which
the case was tried in the county court; and (2) that the
amended petition narrows and limits the issues upon
which the action was tried below. The court sustained
the motion, and the plaintiff electing to stand on his
amended petition, and refusing to plead over, judgment
was given for the defendants. The plaintiff brings error.

The prinicpal question presented for review is whether
the motion to strike the amended petition was erroneously
sustained? But to the consideration of that question the
defendants interpose the objection that the record fails
to show that an authenticated transcript of the proceed-
ings had in the county court was filed in the district court,
and before it, when the motion in question was heard. In
view of the entire record, we do not think that objection
is well taken. The motion to strike is framed on the theory
that the case was in the district court on appeal from the
county court. The record before us begins with these
words:

"Be it remembered that heretofore, to wit, on the 15th
day of June, 1900, there was filed in the above named
district court a transcript from the county court of said
county, which transcript is in the following figures and
words, to wit:"

Then follows what purports to be a transcript of the
record of the county court, showing the pleadings filed and
proceedings had in that court, including a final judgment
in favor of the plaintiff, and an appeal bond, executed by
the defendants and their sureties. Then follows the signa-
ture of the county judge, but there is no certificate at-
tached. But the certificate of the clerk of the district
court to the record, omitting the formal parts, is as fol-
lows:

"I, Charles Behrendt, clerk of the district court of, in
and for Sarpy county, state of Nebraska, do hereby certify
that the above and foregoing is the original bill of excep-

tions, also a true and perfect transcript of the records in the above entitled cause of action as the same appears of file and record in my office."

From the certificate of the clerk of the district court, it follows that the only transcript of the proceedings had in the county court, filed in the district court, is that above mentioned. The motion to strike is based on the theory that the action was pending in the district court on appeal from the county court. It follows, therefore, that what purports to be a transcript of the proceedings had in the county court, as shown by the record before us, was treated by the parties and the district court as a transcript of the record of the county court. Having thus treated it in the district court, neither party can now be heard to say that it should not be treated as a part of the record in this court. It should be noted here that there is no bill of exceptions in the record, the certificate of the clerk to the court notwithstanding.

The defendants further insist that the motion to strike raised an issue of fact, upon which there must have been some evidence, and which, in the absence of a bill of exceptions, will be presumed to have been correctly determined by the trial court. It will be observed that this case is what practitioners before the county court call a term case. In such cases, the issues are made up in the same manner as in the district court. That being true, although the motion to strike did raise issues of fact, it does not follow that the evidence in support of such issues would be of such a character as to necessitate a bill of exceptions. The county court is a court of record; the pleadings filed before it are a part of its record and are the best evidence of the issues presented thereby. Consequently, the issues of fact, raised by the motion in question, were determinable from an inspection of the transcript of the record of the county court. In other words, the question of fact raised by the motion, was, whether the amended petition stated a different cause of action from that stated in the petition upon which the case was sub-

mitted to the judgment of the county court, and the only legitimate way to determine that question was by a comparison of the former with that contained in the transcript of the proceedings had before the county court.

This brings us down to the principal question in the case, hereinbefore stated. That actions must be tried in the appellate court, upon the same issues upon which they were tried below, is settled by a long line of cases decided by this court. But this rule does not require that the petition in the appellate court shall be in the precise language of that upon which the cause was submitted below. The most that it requires is that the ultimate facts relied upon for a recovery shall be the same in both courts, and provable by evidence of the same character. While the facts are more fully stated in the amended petition—and are stated, perhaps, with greater precision than they were stated in the county court—we are unable to discover any ultimate fact, necessary to a recovery under the amended petition, that is not covered by the allegations contained in the petition upon which the cause was submitted to the county court, or to sustain which would require evidence of a different character than was necessary below. The ultimate facts in each case are: (1) That the defendants undertook and agreed to collect certain notes for the plaintiff; (2) that they failed to exercise due diligence in the premises; and (3) that by reason of such failure the plaintiff sustained damages in a certain sum. All other matter, in either petition, is but an amplification of those facts, tending in no way to destroy the identity of the issues, within the meaning of the rule requiring that they be the same in both courts.

The defendants insist that the petition in the county court does not state a cause of action. We think it did. It is true, both pleadings are somewhat argumentative. But a petition is not, for that reason alone, vulnerable to the objection that it does not state a cause of action. The remedy for that vice is by motion.

It is recommended that the judgment of the district

court be reversed, and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.