THE STATE EX REL. WANNEMAKER, Appellant, vs. ALDER, Respondent.

*April 11 — May 1, 1894.*

*Towns and villages, when separate municipalities: Elections: Polling places: Mistake.*

1. Under ch. 341, Laws of 1889,— providing that "all villages which have elected an assessor pursuant to ch. 391, Laws of 1887, shall be separate and independent from the town" in which they are situated,— the test of separation is an *election* of an assessor pursuant to the act of 1887, and it is immaterial that the person elected failed to qualify or that elections for subsequent years were omitted.

2. Where, under ch. 341, Laws of 1889, a village and the town in which it is situated are separate and independent municipalities, the votes of the villagers, to be legal, must be cast at the proper polling place of the village and not at that of the town, even though the places are near together and, by mistake of the officers, no separate election is held at the village polling place.

APPEAL from the Circuit Court for *Crawford* County. The facts are stated in the opinion. The appeal is from a judgment in favor of the defendant.

*D. Webster* and *J. D. Wilson*, for the appellant, argued, among other things, that an election cannot lawfully be held elsewhere than in the place designated, unless the necessity for a change is absolute, discarding all ideas of mere convenience. Law as to time and place is mandatory. 6 Am. & Eng. Ency. of Law, 323, 325; *Melvin's Case*, 68 Pa. St. 333; *Chadwick v. Melvin*, Brightly's Elect. Cas. 251; *Knowles v. Yeates*, 31 Cal. 82; *Simons v. People*, 18 Ill. App. 588; McCrary, Elections, secs. 123, 126, 141; *State ex rel. Bruce v. Davidson*, 32 Wis. 114, 120, 124; *State ex rel. Mercer v. Doyle*, 84 id. 679.

For the respondent there was a brief by *Thomas & Fuller*, and oral argument by *C. S. Fuller*. To the point that an irregularity or mistake of the officers in conducting an election which does not affect the result or confuse the ballot is not sufficient, in the absence of fraud, to set aside an election, they cited *People v. Cook*, 8 N. Y. 67; *Farrington v. Turner*, 53 Mich. 27; *Wheelock's Case*, 82 Pa. St. 297; *Sprague v. Norway*, 31 Cal. 173; *Steele v. Calhoun*, 61 Miss. 556; *Dale v. Irwin*, 78 Ill. 170; *Weil v. Calhoun*, 25 Fed. Rep. 865; *Whipley v. McKune*, 12 Cal. 352; *Taylor v. Taylor*, 10 Minn. 107; *People ex rel. Crimmins v. McManus*, 34 Barb. 625; *Hodge v. Linn*, 100 Ill. 397; *Wis. Cent. R. Co. v. Ashland Co.* 81 Wis. 1; *Stemper v. Higgins*, 38 Minn. 222.

ORTON, C. J.   This is an action in the nature of *quo warranto*, in which the relator claims the office of county clerk of the county of Crawford, as against the defendant as the incumbent of said office.   The facts, according to the findings of the court, are substantially as follows:

The village of Soldiers' Grove was organized out of the town of Clayton in said county, under ch. 40, R. S., in July, 1888.   The village of Lynxville was organized out of the town of Seneca in said county in 1889, and the village of Wauzeka was organized out of the town. of that name in 1890.   In August, 1888, said village of Soldiers' Grove held an election at the "sample room" of Headquarters Hotel, the polling place of said village; and the electors of said village duly elected at said election an assessor, according to sec. 1, ch. 391, Laws of 1887, which gives to villages not incorporated under special charter the power to assess and collect their own taxes; and said village again in 1889 duly elected an assessor; but in both cases the assessor so elected omitted to qualify and perform the duties of assessor. In 1890 and 1891 no assessor was elected in said village, and no election was held for that purpose; but in 1892 the electors of said village not only elected an assessor, but he qualified and made the assessment of the property in said village for that year.   The assessor of the town of Clayton also made an assessment of the property in said village in 1892, which assessment was accepted as the only legal assessment and basis of taxation by the county officers for said village for that year, the same as formerly, and said village assessment was disregarded.   The villages of Lynxville and Wauzeka, from the time of their organization, have elected their own assessors, and voted separately from their respective towns.

At the general election in and for the county of Crawford in November, 1892, the relator and defendant were. the opposing candidates for the office of county clerk of

said county, and at said election the relator received 1,701 and the defendant 1,702 votes for said office, as counted and canvassed by the county canvassing board, and the defendant was declared legally elected to said office, received the certificate thereof, and entered upon the duties of said office for the term of two years from the first Monday of January, 1893. In 1892 the polling place of said town of Clayton was lawfully removed from the "sample room" in the hotel in said village, where it had hitherto been, to the engine house in said village, about 150 feet distant, on the same street; and the electors of said town voted at said last-mentioned polling place at the said general election, and the electors of said village to the number of forty-nine also voted at the engine house, the polling place of the town, and for the defendant. The said voters were duly challenged on the ground that they were not legal voters of the town of Clayton, but were the lawful electors and voters of the village of Soldier's Grove, and therefore had no right to cast their votes at said polling place of said town. If these votes had been rejected, then the whole legal vote of the county would have placed the relator in a large majority over the defendant for said office.

This presents the real question in this case: Were these forty-nine electors lawfully entitled to vote at such town poll, or should they not have voted, if at all, at the "sample room," the last village polling place?

1. If the village had become lawfully separated from the town, and entitled to hold its elections separately from those of the town, then it could make no difference that the former polling place at the "sample room" was inconveniently small for such use or not. It was the village polling place, and the town had no right to remove it to another place. That was the right of the village.

2. It would make no difference that the village held no election for that year, for that would not make the village electors legal voters of the town of Clayton.

3. If the village has been once lawfully separated from the town in its elections, then the electors of the village cannot become lawful electors of the town until the village and the town have become again united by a majority vote of both, according to sec. 2, ch. 341, Laws of 1889 (sec. 870e, S. & B. Ann. Stats.). These propositions are self-evident.

4. If the electors residing in the village are required by law to cast their votes at the village poll, then they cannot lawfully vote at the town poll. They cannot be lawful voters in two places at the same time. By the constitution (art. III, sec. 1) an elector must reside in the election district where he offers to vote. "No elector shall vote except in the town, ward, village, or election district in which he actually resides." R. S. sec. 13. These provisions cannot be compromised by any considerations of policy or convenience. Villages, when organized under ch. 40, R. S., are municipalities, separate and distinct from the towns in which they may be situated; and, when lawfully separated from the towns in their elections, the electors are confined to the villages in which they reside in voting at any election. *Jones v. Kolb*, 56 Wis. 263.

It follows that this question is strictly one of law. The village is either completely and lawfully separated from the town in its elections, or it is not. If it is, then the village electors must vote at the village poll or not vote at all. It is idle to say that the policy of our laws and the rights of the citizens demand that the electors shall not be deprived of their right to vote. The electors have it in their power to provide for holding elections in the village, and if they have not done so it is their own fault. They cannot correct their own fault and neglect by being allowed to vote at the town poll at which the law gives them no right to vote. If the law has established a precinct in which only the electors can vote, then it is their duty to hold an election there, and they omit such a duty under the penalty of losing their right to vote anywhere.

It is profitless to consider the various acts of the legislature on the subject of incorporated villages and their relations to the towns in which they are organized. This village was organized in 1888, subject to the provisions of ch. 391, Laws of 1887, which gave all villages the power to assess and collect their own taxes. Sec. 1, ch. 341, Laws of 1889, provides as follows: " Until proceedings have been taken under this chapter for the purpose of determining whether any village organized under chapter 40 of the Revised Statutes, and a town within which such village may be situated, shall be separate and independent municipalities or shall be united for town purposes, it is hereby declared that all villages which have elected an assessor pursuant to chapter 391 of the Laws of 1887 shall be separate and independent from the town; and that all villages which have not elected an assessor pursuant to said chapter shall be deemed to be a part of the town for town purposes the same as though said chapter 391 of the Laws of 1887 had not been passed." Sec. 2 of said act provides that, " in case the village shall be a separate and independent municipality, as provided in section 1,"— that is, by the election of an assessor,—it shall remain so until a separate majority vote of both village and town shall determine that they shall again become united. The intention of the legislature in passing this act, so far as above recited, is clearly and fully expressed in its language. It establishes a *test* for determining whether the village shall be separate from the town. The election of an assessor by the electors of the village is accepted as an expression of the voice and will of the people of the village in favor of a separation from the town. The electors voted for an assessor in 1888, with a perfect understanding of its import; that is, that it would work a separation from the town for the future and until again united in the way provided in the act. The legislature might have established some other *test*, but this

The State ex rel. Wannemaker vs. Alder.

test involved an expression of the will of the electors of the village on the matter of assessment which had hitherto been under the control of the town. There could not be any expression of their will in any other way in respect to the assessment and collection of the village taxes. Everything except the election of the assessor is done by the officers of the village, and would therefore be no test for determining the wish or will of the electors of the village on the question of their separation from the town. To have made an assessment or the collection of the taxes a *test* would not answer the purpose in view, and would have been senseless and unreasonable. What right have we to add anything to such a legislative test by which it was to be determined that the village shall thereafter be a separate and independent municipality? We have no right to legislate, even in the name and by the way of *construction*. If we should, by way of construction, require other things to be done by the village or the electors as a condition precedent to the village becoming separate from the town, we should prescribe a new test, and one not found in the statute. The language and purpose of the act agree. The election of an assessor was an expression of the popular will in favor of separation. That shall " determine whether such village shall be a separate and independent municipality," in the language of the statute, and nothing else can or may. On so plain a matter citing authorities would imply an uncertainty or doubt where none exists.

On the election of an assessor in August, 1888, the village of Soldiers' Grove became a separate municipality, and thereafter its electors must vote in the village precinct and at the village poll. It was the duty of the village authorities to provide for village elections. The election of an assessor was at the "sample room" in the hotel, and so the polling place of the village was fixed. If the assessor elected failed to qualify and to discharge the duties of the

office, the remedy is with the village authorities, as in any case of an elected officer refusing to qualify. The statutes prescribe what may be done in such case. One thing, however, is certain: the failure of the assessor to qualify, or the failure of the village to hold elections, does not reunite the village to the town. That can be done only by a majority vote of both the village and the town in favor of it, as provided in the act of 1889. By the negligence of the village authorities, and perhaps of the electors themselves, the forty-nine village electors who voted for the defendant at the town polling place have lost their votes. It was their own fault. They are presumed to have known the law.

It is contended that the town polling place and that of the village were so near each other that it ought not to make any difference at which the electors of the village and of the town should vote. These polls were as separate and distinct in the law as if they were far distant from each other. Such an argument of convenience and policy would destroy the effect of all our election laws, and remove all the statutory safeguards against election frauds. There must be one certain, fixed place at which the electors must vote. That is as important as the qualifications of the voters.

The argument that the election officers of the town are *de facto* officers, and therefore held a lawful election, has no force. The town was holding its own election where the electors of the town had a right to vote. But it does not follow that the electors of the village had a right to vote at that place. Such an argument would make the vote of a person at this town poll, who resided in another town, a lawful one. There is no argument strong enough to destroy the force of law when expressed in such clear and unequivocal language, and the violation of such a law cannot be palliated or excused.

It follows, therefore, that the said forty-nine votes of the

electors of the village cast for the defendant at the town poll were illegal, and should not have been counted or canvassed, but should have been rejected by the inspectors on their having been challenged. It follows, also, that the relator was legally elected to the said office, and is entitled to the same as against the defendant, and that the defendant should surrender the same to the relator on demand.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to the circuit court to render the proper judgment in favor of the relator, according to this opinion.