| 92 599
| 94 270

THE STATE EX REL. NYE, Appellant, vs. WEINGARTEN, Respondent.

*March 10 — March 27, 1896.*

*Towns and villages, when separate municipalities: Elections.*

Sec. 1, ch. 341, Laws of 1889, was intended to apply only to villages then incorporated, and to declare their existing *status* as independent municipalities or as united for town purposes with the towns in which they were situated; and a village thereafter incorporated was within sec. 2 of said act, and could not become a

separate and independent municipality until so determined by a majority vote of both town and village as therein provided. Until such a determination, therefore, electors residing in a village incorporated after the enactment of said statute are legal voters at any town meeting.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

This was a proceeding by *quo warranto*, in which the relator claimed the office of town clerk of the town of Hamilton, in La Crosse county, as against the defendant. Upon trial before the court, it appeared that both parties were candidates for the office at the town meeting April 3, 1894, and according to the canvass the relator received 130 votes, and the defendant 146; but whether the relator was elected depended upon whether thirty-two votes cast for the defendant by electors residing in the village of West Salem, situated in said town, were qualified electors of the town and entitled to vote at said town meeting. If said thirty-two votes were not legal votes, then the defendant received only 114 legal votes for the office, and the relator received the highest number of votes, and was duly elected and entitled to have and hold said office.

The validity of said thirty-two votes depends upon the following facts, and whether the said thirty-two electors of said village of West Salem were, at the time of said town meeting, qualified electors of said town of Hamilton and entitled to vote for the defendant at said election: The village of West Salem was incorporated as a village under the provisions of ch. 40, R. S., and acts amendatory thereof, June 8, 1893, and formed out of a part of the territory of the town of Hamilton. At the first election for village officers held in said village, in August, 1893, an assessor for said village was elected, pursuant to ch. 391, Laws of 1887; and he qualified, but did not perform any official duty. No election has ever been held, either in said village of West Salem

or in the town of Hamilton, for the purpose of determining whether said village should be an independent municipality from said town, in the manner provided by law.

The court held that all electors residing in the village of West Salem, April 3, 1894, were duly qualified electors and entitled to vote for town officers of the town of Hamilton at said town meeting, and that the thirty-two votes cast for the defendant by such electors were valid and legal votes; that the defendant was then duly elected to the office claimed by the relator, and entitled to hold the same; and judgment was given for the defendant and against the relator, from which the latter appealed.

For the appellant there was a brief by *Wyatt H. Graves*, attorney, and a separate brief by *Fruit & Brindley*, of counsel, and oral argument by *Mr. Graves* and *Mr. J. J. Fruit.*

For the respondent there was a brief by *Losey & Woodward*, and oral argument by *G. M. Woodward.*

PINNEY, J.   In the case of *Jones v. Kolb*, 56 Wis. 263, the relations that had existed between towns and incorporated villages situated in such towns, prior to the enactment of ch. 40, R. S. 1878, and the policy of the state on this subject, were very fully considered, with a view to the construction and effect of said chapter; and the court arrived at the conclusion that it was "the undoubted intention of the legislature in enacting said chapter, prescribing the manner of organizing villages within this state, and defining the powers, duties, and privileges which such villages so organized should have, exercise, and enjoy, that when so organized they should be separate and independent municipal corporations;" and it was held that a resident and elector of a village so organized was not authorized to vote for town officers at the town meetings of the town within the limits of which the territory composing the village was situated, and that ch. 40, R. S., was a valid enactment.

This accomplished a radical change in the relations which had theretofore existed between towns and villages thus circumstanced, and at the next session of the legislature after this decision, by sec. 4, ch. 178, Laws of 1883 (sec. 892$a$, S. & B. Ann. Stats.), it was provided that every legal voter residing within an incorporated village or city, the territory of which formed a part of any town, should be a legal voter at any town meeting in such town, unless upon a separate vote at a special town meeting and a special village or city meeting, called and held as provided by law, it should be determined that the town and village or city should be and remain distinct for all purposes, in which case voters of a village or city were not to be voters at town meetings of the town in which the village or city was situated.

Subsequently, by ch. 391, Laws of 1887 (S. & B. Ann. Stats. sec. 870$a$), ch. 40, R. S., was amended so as to confer upon incorporated villages or cities, not existing under special charter, the power to assess and collect all taxes within the same, levied and assessed for all purposes, and, to that end, said ch. 391 provided for the election of an assessor in such cities and villages, and the making of assessments and tax rolls therein, and, by sec. 3, that "the electors residing within any incorporated village *that assesses and collects the taxes* under the provisions of this act *shall not be legal voters* at any town meeting held in the town in which said village is situated;" and all acts and parts of acts in conflict with said act were repealed.

This act was followed by ch. 341, Laws of 1889 (sec. 870$d$, S. & B. Ann. Stats.), relating to villages incorporated under ch. 40, R. S., and acts amendatory thereof, and "declaring the proper construction of ch. 391, Laws of 1887," which provided that "until proceedings have been taken under this chapter for the purpose of determining whether any village organized under chapter 40 of the Revised Statutes, and a town within which such village may be situated, shall

be separate and independent municipalities, or shall be united for town purposes, it is hereby declared that all villages *which have elected an assessor* pursuant to chapter 391 of the Laws of 1887, shall be separate and independent from the town; and that all villages which *have not* elected an assessor pursuant to said chapter, shall be deemed to be a part of the town for town purposes, the same as though said chapter 391 had not been enacted." Sec. 2 provides that: "Whether any village organized under chapter 40 of the Revised Statutes *shall be an independent municipality* from the town in which it is situated shall *depend upon the decision of such village and such town,* separately made by special elections to be held in the village and the town; and in case the village *shall be* a separate and independent municipality as provided in section one of this act, then it shall so remain separate and independent until both the town and the village shall, by a majority vote, determine that they shall be united for town purposes; and in case the village *shall not be* an independent municipality as declared by section one of this act, then it shall not become an independent municipality until so determined by a majority vote of both town and village as so provided." The act contains special provisions for holding all elections under the act.

The question is whether the village of West Salem ever became an independent municipality from the town of Hamilton, in which it is situated. In *State ex rel. Wannemaker v. Alder,* 87 Wis. 554, it was held that the test of separation between a town and a village situated within it is whether the village has elected an assessor pursuant to the provisions of said act of 1887; but that was a case where such determination by the election of an assessor had been made in 1888, and *before* the act of 1889. In the present case the village of West Salem was not incorporated until after the act of 1889,— July 8, 1893. Had this village a right, under the act of 1889, without a vote of both the city and vil-

lage as therein provded, to become an independent munici-
pality by simply electing an assessor? We think it had
no such right. When incorporated, it was united, by force
of the law, with the town, for town purposes; and its case
fell within the plain meaning of the last clause of sec. 2, ch.
341, Laws of 1889, and it could not "become an independ-
ent municipality until so determined by a majority vote of
both town and village," as above provided.

The contention on the part of the relator is that the village
was an independent municipality, as declared by sec. 1 of
the act. Under that section, until a vote should be taken
on the question whether the town and village should be
separate and independent municipalities, or united for town
purposes, "all villages which *have elected* an assessor pursu-
ant to chapter 391 of the Laws of 1887, shall be separate,"
etc. The act of 1889, of necessity, had to deal with the
existing *status* of villages situated in towns, and to make
provision for cases arising in the future. To that end, sec. 1
deals with what had already occurred, and declares that
"all villages which *have not* elected an assessor" pursuant
to the act of 1887 "shall be deemed to be a part of the town
for town purposes, the same as though said chapter" had
not been enacted. The general policy indicated by the act
was to make the question, in which they were both alike
interested,— whether such towns and villages in the future
should be separate and independent municipalities, or united
for town purposes,— one requiring the action of the electors
of both the town and village, acting separately, for its deter-
mination; and it was intended to preserve the *status* where
a village, by its own action merely in electing an assessor
before the act of 1889 was passed, had *already* settled that
matter, and at the same time to provide a new and uniform
rule as to all cases arising after the enactment of 1889. It
was not, we think, intended that a village incorporated after
this act was passed should have the power to determine in

the future, as such villages had in the past, of its own motion, the question whether the town and village shall be separate and independent municipalities, requiring a division of the common property as provided in sec. 4, when full provisions for determining that question by the town and village by separate vote, by a fair and natural reading of the act of 1889, are contained therein, and all acts and parts of acts contrary to the provisions of such act have been repealed.

. In view, therefore, of the language of the act, past legislation, and the obvious scope and policy of the act of 1889, we must hold that at the time the town meeting was held in the town of Hamilton, in 1894, the village of West Salem was united with such town for town purposes. It follows that the thirty-two votes cast for the defendant by electors residing in such village were legal votes, and the circuit court rightly held that the defendant was legally elected town clerk.

*By the Court.*— The judgment of the circuit court is affirmed.