WALDO E. WHITCOMB, APPELLANT, V. HIRAM CHASE, APPELLEE.

FILED FEBRUARY 6, 1909.   No 15,505.

1. **Elections: APPEAL: TRANSCRIPT: AUTHENTICATION: WAIVER.** To properly perfect an appeal from the county court to the district court in an election contest, the filing of a duly authenticated transcript is required. But if the transcript filed is not duly authenticated, yet no objection thereto is made by the appellee, and the parties treat it as sufficient and try the case on its merits, the jurisdiction of the district court cannot be questioned for the first time on appeal to this court.

2. ———: CHANGE OF POLLING PLACE. It is the general rule that an election should be held at the place designated in the election notice. But, where the board cannot procure the place so designated for the purpose of holding the election, they may, in such emergency, change the polling place to another suitable, convenient, and proper location, giving due notice of that fact; and, unless it appears that a sufficient number of the electors to change the result of the election were deprived of an opportunity to cast their votes by reason of such change, and where it affirmatively appears that the election was fairly and honestly conducted, and that the result would have been the same had it been held at the place designated in the notice, such change will not render the election void.

APPEAL from the district court for Thurston county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Howard Saxton, Thomas L. Sloan, Curtis L. Day, J. H. Van Dusen, L. J. Te Poel* and *Waldo E. Whitcomb,* for appellant.

*Hiram Chase* and *R. E. Evans, contra.*

Barnes, J.

Waldo E. Whitcomb and Hiram Chase were rival candidates for the office of county attorney of Thurston county at the general election held in November, 1906. Chase was declared elected, and has served out his term. Whitcomb contested his election by proceedings instituted in due time in the county court, where he had judgment. Chase appealed to the district court, where, after a protracted trial, the judgment of the county court was reversed, and his election was confirmed. Whitcomb thereupon appealed to this court, and asks for a reversal of that judgment. For convenience he will be called the plaintiff, and Chase will hereafter be called the defendant.

The plaintiff contends that the district court never obtained jurisdiction of the case, and its judgment is therefore void. It appears that the transcript from the county court, as copied by the clerk of the district court, is without a certificate, or, in other words, is not duly authenticated, and it is claimed that the district court never obtained jurisdiction of the case. The defendant has brought here a certified copy of what he alleges to be the last page of the transcript of the judgment of the county court which contains a proper certificate, and alleges that the same was a part of his transcript when it was filed in the district court, and that it has in some way become detached therefrom and asks leave to file it as a part of the transcript in this court. To this the plaintiff strenuously objects. In our view of the matter, it is unnecessary for us to determine this question. It appears that plaintiff made no objection to the jurisdiction of the district court; that both parties treated the case as though the appeal was properly perfected, and no suggestion was made, or appears in the record, that the transcript of the judgment of the county court was not properly certified at the time it was filed, and when the trial in the district court took place. Therefore the plaintiff is not in a position at this time to object to the jurisdiction of that

court. A like question was before us in *Coleman v. Spearman, Snodgrass & Co.,* 68 Neb. 28, where it is said: "Although the filing of a duly authenticated transcript is required in order to perfect an appeal from the county court to the district court, and although the transcript filed for such purpose is not thus authenticated, yet, if the parties proceed in the district court on the theory that the appeal has been perfected, they will not be heard to question the sufficiency of such transcript in this court." Plaintiff strenuously contends that this rule should not be applied to the case at bar. It is argued that the district court has no original jurisdiction in cases of this kind; that it only obtains jurisdiction by appeal, and if the appeal is not properly perfected that court has no jurisdiction. In support of this proposition many cases are cited which hold that jurisdiction of the subject matter of an action cannot be conferred by consent. That this is the well-established rule cannot now be questioned; but we are of opinion that it has no application to the facts of this case. Our statutes relating to the contest of elections provide for an appeal from the judgment of the county court, and declare that the proceedings shall be assimilated to those in an action as far as practicable. The district court having been given appellate jurisdiction of the subject matter of such contests, mistakes and irregularities in perfecting an appeal will not deprive it of such jurisdiction. Defects and irregularities in perfecting an appeal may be waived by the parties, and failure to make seasonable objection to the jurisdiction of the district court will constitute a waiver. In such case an objection to the jurisdiction made for the first time in this court comes too late, and will not be considered. We are therefore of opinion that the district court had jurisdiction of the subject matter and the parties, and had power to pronounce the judgment complained of.

This brings us to the consideration of the merits of this controversy. It appears that plaintiff's ground of contest is based on the removal of the polling place in Omaha

precinct, which had been designated in the notice of election as the "Lamson or Quinton schoolhouse," to the village of Walthill in said precinct. And it is alleged that by such removal a large number of electors who would have voted for the plaintiff but for such removal were deprived of their right to vote, and that a sufficient number of voters were deprived of that right to change the result of the election.

The testimony discloses that during the two years previous to the general election in question there had grown up in that precinct a thriving village called Walthill, which is located about three miles from the Lamson or Quinton schoolhouse; that the village was the most convenient place for holding the election, and a change of the polling place to that village would best accommodate a great majority of the electors residing in that precinct. When it was ascertained that the notice of the election designated the schoolhouse above named as the polling place for that precinct, it caused much dissatisfaction and the electors sought to make suitable arrangements for the removal of the voting place to the above named village. To that end the members of the election board went to the county seat and advised with the plaintiff, who was then the county attorney of Thurston county, as to what method should be adopted in order to effect such removal. It seems that it was agreed that, in case the schoolhouse could not be obtained for election purposes, that fact would create such an emergency as would authorize the board to procure another polling place and enable them to thus designate Walthill as the place where the election should be held. It further appears that on the morning of election day, and before it was time to open the polls, the election board met at the schoolhouse, took the oath of office, and ascertained from one of their number, who was also one of the directors of the school district, that the schoolhouse could not be used for election purposes. They thereupon ordered that the election should be held in the village of Walthill, gave notice to

all persons present of that fact, and posted a suitable notice of the change of place of election upon the school-house door. They thereupon repaired to Walthill, where the election was held in all other respects in due conformity to law.

The plaintiff on the trial produced several witnesses who testified that but for the change of the place of election they would have voted, and, if they had voted, they would have voted for him for the office of county attorney, and that they did not vote at said election. It appears, however, from the cross-examination of those witnesses that they were members of a threshing crew who were working that day for a man by the name of Phillips, at a place about equidistant from the schoolhouse and the village of Walthill; that they knew of the change of the place of election and discussed that matter as early as 2 o'clock in the afternoon of election day; that they were anxious to finish their threshing and those who worked at and about the machine concluded that they would not attend the election for that reason and not for the reason that the voting place had been changed. It further appears that some of the persons engaged in hauling the grain away from the machine did go to Walthill and cast their votes for the plaintiff; that none of the crew were prevented, by reason of the removal of the place of election, from voting if they had desired to do so. There is some evidence in the record tending to show that one person, an Indian, called Little Soldier, came to the schoolhouse and went away again; that he afterwards went to Walthill; that he did not vote, but it is doubtful if it can be said that he went to the schoolhouse for the purpose of exercising his right of franchise.

It further appears that all of the members of the election board who took part in the transaction belonged to the political party with which the plaintiff affiliates, and that all of them voted for him at said election; that the defendant took no part in procuring the change and was not aware that such change had been made until long

after the election.  So it may be said that it affirmatively appears that the change was made in good faith and without fraud, and without any intention, or purpose to injure the plaintiff or deprive him of the vote of any elector of Omaha precinct.  It is the contention of the plaintiff however, that this is immaterial, and that the mere fact that the election was not held at the place designated in the notice renders it void as to that precinct.  It appears that the defendant had a majority of 6 votes in the whole county, and a majority of 19 votes in Omaha precinct.  Of course, if the whole of this precinct was rejected, it would result in plaintiff's election.  As to whether the whole vote of this precinct should be rejected we find the authorities are divided; some holding that the mere change of the place of voting renders the election void, while it is declared by others that, unless it is shown that the change was fraudulently made or resulted in the loss of votes to the plaintiff, the electors of the precinct should not be disfranchised and the election declared void.  It is unnecessary for us to review these conflicting authorities for we are satisfied that we are committed to the rule that, if an irregularity, of which complaint is made, is shown to have deprived no legal voter of his right or admitted a disqualified person to vote if it cast no uncertainty on the result and has not been occasioned by the agency of a party seeking to derive a benefit from it, it may well be overlooked, and that such irregularity will not render the election void.  *Baltes v. Farmers Irrigation District*, 60 Neb. 310.  This rule is also supported by *Piatt v. People*, 29 Ill. 54; *DeBerry v. Nicholson*, 102 N. Car. 465; *Seymour v. City of Tacoma*, 6 Wash. 427; *Cleland v. Porter*, 74 Ill. 76, and *Fry v. Booth*, 19 Ohio St. 25.

It is urged by the defendant that the plaintiff is estopped to question the validity of the election because of his advice to the election board and his apparent participation in their act of changing the place of election. We deem it unnecessary to determine this question, and

we are not prepared to say that, if the change had actually deprived any considerable number of the electors of their right to vote or had in fact been the means of changing the result of the election, the contestant could not take advantage of that fact; but such is not the case. The election was fairly conducted, no one was deprived of his right to vote if he desired to exercise that right, and there is no competent evidence in the record that the result would have been at all different had the election been held at the place designated in the election notice.

For the foregoing reasons, we think the judgment of the district court was right, and it is

AFFIRMED.