## WALLACE v. EXCISE BOARD OF BRYAN CO. et al.

No. 11212—Opinion Filed June 19, 1923.

**1. Schools and School Districts—Special School Levy Election.**

Section 33, chap. 226, Session Laws of 1917, provides: "The annual rate of levy for school purposes may be increased by any amount not to exceed ten mills on the dollar valuation on condition that a majority of the tax paying voters, voting thereon, shall vote for such additional levy, and by a majority vote approve an estimate to be submitted to the county excise board. The election so held for such purpose shall be by yea and nay vote, and the additional

levy, so made, shall be certified to the county excise board along with said estimate."

**2. Same—Lack of Compliance with Statutory Notice.**

Where a special election is assailed on the ground of lack of compliance with all of the statutes complied with reference to notice, but there is no averment or showing that the electors did not have actual notice or knowledge of the election and failed to participate therein by reason thereof, the same shall not be held void on this account.

**3. Same—Harmless Irregularities.**

The general rule is, where the statute does not in express terms declare an election void for violation of the statutory provisions, the election will be sustained, and the violation of the statute will be treated as an irregularity going to the form, instead of the substance, where from all the facts the court concludes that in spite of the departure from statutory requirements, a full and fair ballot has been cast and a true and fair return of the entire election has been canvassed and made.

**4. Same—Change of Voting Place—Invalidity of Election.**

Where an election is advertised to be held upon a date certain and a place certain, and the voting place is changed on the day of the election to a point at a considerable distance from the original polling place, and no notice is given, by posting or otherwise, an election so held will be void.

**5. Same.**

Where an election is advertised to be held "at the schoolhouse," and there are two schoolhouses in the district, both outside the corporate limits of a town, and neither school is definitely designated, and the election is held within the corporate limits of a town, without notice of the change, by posting or otherwise, an election so held will be void.

**6. Schools and School Districts — Special Meetings—Notice.**

Section 7782, Rev. Laws Okla. 1910, provides: "Special meetings may be called by a majority of the district board, or by a majority of the legal voters of the district, but notice of special meeting, stating the purpose for which it is called, together with the time and place, shall be posted at least ten days before the meeting in five public places."

**7. Same—Special School Levy Election—Validity—Disqualified Voters Participating—Disqualified Voters.**

The mere fact that an inconsiderable number of persons disqualified to vote at a school election for the purpose of making an additional levy under the law were permitted to participate therein is not sufficient to avoid such election, where it is possible to ascertain the true vote, and the proposition carried by the requisite number of votes.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Appeal from District Court, Bryan County; Geo. S. March, Judge.

Proceeding for an injunction by Ita Wallace against the Excise Board of Bryan County, Okla., et al., to restrain the said board from certifying a levy of seven mills to the county assessor and restraining said board from approving the estimate for current expenses filed with said excise board by School District No. 5, and from making any levy of taxes based on the estimate so filed, and restraining said county assessor from extending said levy upon the tax rolls of the said school district, and restraining the county treasurer from collecting or attempting to collect such taxes. Judgment for defendants, and plaintiff brings error. Affirmed.

McPherren & Cochran, for plaintiff in error.

John L. Bolan and Utterback & McDonald, for defendants in error.

Opinion by RUTH, C. This was an action brought by Ita Wallace, a resident and taxpayer in school district No. 5 of Bryan county, Okla., to restrain the excise board of said county, and others, from certifying an alleged illegal levy of seven mills to the county assessor, and restraining said excise board from approving the estimate for current expenses filed by the school board of school district No. 5, and from making any levy based upon the estimate so filed, and restraining said county assessor from extending said illegal levy upon the tax rolls of said district, and restraining the county treasurer of Bryan county from collecting, or attempting to collect, such illegal tax. The parties to this action shall be designated herein as they appear below.

The petition of the plaintiff, after setting out the official capacity of the various defendants in error, sets forth the fact that the laws of the state of Oklahoma provide that an annual meeting of each school district shall be held on the second Tuesday of July of each year, and at such places as the board shall designate, and that said laws further provide that the school electors of any school district shall vote at the annual meeting as to whether an excess levy shall be levied for the next ensuing year and the amount of such excess levy. The petition further sets forth that the election held in the said school district on July 30,

1919, was not held on the second Tuesday in July, 1919, and such election was not at the annual meeting of such school district, and the action of the electors of said school district of said district in voting such additional levy at said time and place was illegal and void.

Paragraph 2 of the plaintiff's petition recites that on the second Tuesday of July, 1919, the regular annual meeting of the electors of school district No. 5 was held and at the same time and place there was submitted to the electors of the said school district the question as to whether an additional levy of seven mills for the maintenance of the schools of said district for the fiscal year ending July 30, 1920, should be levied, and at the election so held a majority of the electors voting at said election voted against such additional levy, and that after the question had been submitted to the voters of the district at the regular annual meeting, the board of education had no right, power, or authority to hold another election for voting on said question of additional levy.

The plaintiff further sets up in her petition that it is necessary at the time the additional levy is submitted to the vote of the taxpayers of such district there shall also be submitted to such voters estimate of the current needs of such school district for the fiscal year to be submitted to the excise board, and a majority of the voters of such district shall approve such estimate at the annual meeting held for that purpose, and, further, alleges that at the election held on the 30th day of July, 1919, no estimate of the current needs of the school district was submitted to the vote of the electors of the said district, and an estimate to be submitted to the excise board was not approved by a majority of the voters of the district voting at the election, and for the reasons therein set forth plaintiff alleges that the election of July 30, 1919, was illegal and void,

The evidence in this case discloses that school district No. 5 of Bryan county is an independent school district, and that on the second Thursday of July, 1919, the board of education met, and after having published notices of an election for the purpose of levying seven mills additional to the five mill levy proceeded to hold an election.

It appears from the evidence that said election was called by the school board and the notices read that said election would be held at the "schoolhouse in said district," but the evidence further discloses that there are two schoolhouses in said district, one

south of the town of Caddo and the other northwest of the town of Caddo, and the notices did not designate at which one of these schoolhouses the election would be held.

The undisputed testimony is that on the date of the election which was to be held on the 8th day of July, 1919, the voting place was changed without notice to any of the electors, or without posting any notice on either schoolhouse of such change, and the election was held at a real estate office in the town of Caddo, variously estimated at from one-fourth and one-half mile from either schoolhouse. At this election so held, a majority of the electors voting at said election cast their vote against the seven mill excess levy, but said election was held invalid by the school board by reason of the fact that no notice had been given of the change in the voting place and the electors were denied their rights to vote on the question so submitted. In so declaring this election illegal, we think the board was well within its rights, for it has been repeatedly held that where a voting place is changed to any considerable distance from the advertised voting place, and no notice is given of such change, and the electors are denied their right to vote, such election does not fairly express the will of the majority and should be held invalid and void.

See Goree et al. v. Cahill et al., 35 Okla. 42, 128 Pac. 124; 15 Cyc. 343; Johnston v. Robertson, 8 Ariz. 361, 76 Pac. 465; Walker et al. v. Sanford, etc., 78 Ga. 165, 1 S. E. 424; Melvin's Case, 68 Pa. 333; State ex rel. Wanamaker v. Alder, 87 Wis. 554, 58 N. W. 1045; Williams et al. v. Potter et al., 114 Ill. 628, 3 N. E. 729; Whitcomb v. Chase, 17 Ann. Cas. 1088 (83 Neb. 360, 119 N. W. 673).

The plaintiff contends in her brief that before an election shall be held for making an additional levy it is necessary that:

"The financial statement and estimate for the county, city, incorporated town, township and board of education, if prepared in accordance with the provisions of this act shall be published in some newspaper published in said municipality, in one issue, if published in a weekly newspaper, and two consecutive issues if published in a daily. In the event there is no paper published in such county, city, incorporated town, or township, then a copy of such statement and estimate shall be posted in at least five public places therein, which posting shall be made in each instance within five days after the meeting of the said township board. Said publication or posting shall be made in each instance by the board of authority making the estimate. Said estimate so made out and published as

aforesaid shall as soon as completed be certified to the excise board of the county, together with an affidavit attached showing the publication or posting thereof as required by this act."

Section 3 of the Session Laws of 1917, being the same act as above quoted, provides:

"The annual rate of levy of five mills for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation on condition, that a majority of the tax paying voters voting shall vote such additional levy and by their vote approve the estimate to be submitted to the county excise board. The election so held for such purposes shall be by yea and nea vote and the additional levy so made shall be certified to the county excise board along with said estimate."

It is stipulated by the parties to this action that the publication was not made as provided by section 2 of the act of 1917, but the evidence shows that the estimate was prepared and spread upon the table in the room where the election was held on July 30, 1919, and that all parties had access thereto, and that there had been considerable agitation in school district No. 5 relative to the seven mill levy and that all persons in said district had knowledge of the election and the purposes for which it was called. A careful examination of all the evidence fails to disclose that any qualified elector in the said district No. 5 was deceived as to the time or place of holding said election or the purpose for which the election was held, and that no qualified elector was denied the right to vote at said election. The plaintiff does not make any averment of showing that the electors did not have actual notice or knowledge of the election and failed to participate therein by reason thereof, and this court has held in Ratliff et al. v. State ex rel. Woods, County Attorney, 79 Okla. 152, 191 Pac. 1038:

"Where a special election is assailed on the ground of lack of compliance with all the statutory requirements in reference to notice, but there is no averment or showing that the electors did not have actual notice or knowledge of the election and failed to participate therein by reason thereof, the same will not be held void on this account." Lowe et al. v. Consolidated School District No. 9, Blaine County et al., 79 Okla. 115, 191 Pac. 737.

It is contended by the plaintiff that because of the fact that the estimate for current school needs for the year 1920 was not published in a newspaper as required by section 2, chap. 226, Session Laws of 1917,

the election held on July 30, 1919, was illegal and void and section 3 of the same act provides for the holding of an election for the excess levy, but the act nowhere expressly provides that such publication shall be a prerequisite to the holding of the election, nor does the statute in express terms declare the election void if such publication is not made, and this court has held, Lamb v. Palmer, 79 Okla. 68, 191 Pac. 184:

"The general rule is, where the statute does not in express terms declare an election void for violation of certain statutory provisions, the election will be sustained and the violation of the statute will be treated as an irregularity going to the form, instead of to the substance, where, from all the facts, the court concludes that, in spite of the departure from statutory requirements, a full and fair return of the election has been canvassed and made."

Counsel for plaintiff rely upon Nelson, Sheriff, v. Okla. City & W. Ry. Co., 24 Okla. 617, 104 Pac. 42, which is clearly distinguishable from the case at bar, as in the case cited the statute required the township board of directors to make out an account of the amount of money necessary to defray the township expenses during the next ensuing year, and further required that this account shall be made out not more than 60 nor less than 20 days prior to the meeting of the county commissioners at which the assessment for county purposes is made, and further provided that the account so made out must be signed by the president of the board and attested and filed with the clerk of the county on or before the first day of said session of county commissioners, who shall cause same to be placed upon the tax books of said township. It was admitted that the township board met on September 7, 1906, for the "purpose of levying a special road and bridge tax and that six mills was agreed upon as being sufficient for this purpose." It further appeared that even this was not filed with the county clerk, but on September 17, 1906, someone telephoned the county clerk (this being the day on which the county commissioners were to meet) that the township board had met on July 7, 1906, and had determined on a six mill levy for "general township purposes," and that no account of any nature was filed with the county clerk until February 2, 1907, and was not signed by the president of the board and attested as required by law, and Kane, J., properly said the officers had "failed to comply with the statute in letter or in spirit."

The cases of Hewes v. Reis, 40 Cal. 255, and Best v. Gholson, 89 Ill. 465, relied upon

by the plaintiff, have been carefully examined, and are clearly not in point. The former involved a. question of special assessments for improvements. The law imperatively required a five days notice by publication. and but three days notice was given. Best v. Gholson, supra, involved the question of waiver of homestead rights, and the statute provided that without the words "including the release or waiver of the rights of homestead" no deed or other instrument shall be construed as releasing or waiving such a right.

The plaintiff, in the court below, raised the point that a number of illegal votes were cast at the election of July 30, 1919, some of which were for the levy and some against, but after discarding all illegal votes, there still remained a large majority vote "for the levy."

"The mere fact that an inconsiderable number of persons disqualified to vote at a bond election were permitted to participate therein is not sufficient to avoid such election, where it is possible to ascertain the true vote, and the proposition carried by the requisite number of votes." Shelton et al. v. School District No. 22, City of Tulsa, 43 Okla. 239, 142 Pac. 1034.

Briefly summarized, we find the following: An election was advertised for July 8, 1919. The voting place was indefinite in the notice. The notices recited the election would be held at the schoolhouse; there were two schoolhouses in the district, neither of which was in the town of Caddo. On the day of election the voting place was changed without notice and held in a real estate office in the town of Caddo, and a very inconsiderable vote was cast. This election was declared illegal, and another election called for July 30, 1919, and notices posted for ten days as required by law, and was held at the time and place specified in the notice. That the voters had petitioned for this election, that wide publicity was given to the question to be voted upon, and so general was the information disseminated that the meeting was largely attended by both qualified and unqualified voters; that the estimate of the board was posted in the room where the election was held; that unqualified voters voted both for and against the excess levy, and, after the elimination of the illegal votes, there remained approximately a two to one vote for the levy; that no person qualified to vote was denied the opportunity to express his or her desires as to the levy, and that this injunction was sought for the purposes of restraining the proper officers from prop-

erly certifying the levy and extending it upon the tax rolls, or from collecting the same.

After a careful review of the facts, all of which are practically admitted, and a careful consideration of the statutes in force at the time, and the unbroken line of decisions of this court, and a careful analysis of the cases cited by the plaintiff, it is held that the election of July 7, 1919, was illegal for the reasons hereinbefore stated, and that the election of July 30, 1919, will not be disturbed by reason of certain irregularities of form, and that the judgment of the court in denying the injunction prayed for should be affirmed.

By the Court: It is so ordered.