ROBERT C. ZIMMERMAN, Secretary of State
You advise that your office has received inquiry from a local election official as to whether a former resident and registered voter of his district, who has informed him that she now resides permanently in a foreign country, has the right to vote for president in the election district of her former residence by absentee ballot, since she has retained her United States citizenship.
As a general proposition, qualifications for voting are established in the first instance by the respective states. As stated in 25 Am. Jur. 2d, Elections, sec. 58, at page 751: *Page 21 
"The right to vote may be dependent on the existence of certain conditions or on compliance with prescribed requirements, and such conditions and qualifications vary, of course, with the constitutions or laws of the several states."
However, the federal government may, if it so desires, modify or eliminate the application of state voter regulations as they relate to federal elections. It did so, for instance, in adopting The Voting Rights Act of 1965, 79 Stat. 437; 42 U.S.C. § 1973 seq. This law, as amended, was more recently treated by the United States Supreme Court in Oregon v. Mitchell (1970), 400 U.S. 112,91 S.Ct. 260, 27 L.ed. 2d 272, and companion cases, which held that the 18-year-old vote provisions set forth in Title III of The Voting Rights Act Amendments of 1970, Pub.L. 91-285,84 Stat. 314, were constitutional and enforceable insofar as they pertained to federal elections, and unconstitutional and unenforceable insofar as they pertained to state and local
elections.
The views of Mr. Justice BLACK, who announced the judgments of the court in Oregon v. Mitchell, appear most instructive in reference to the question here being considered, particularly since his ultimate conclusions appear to have been adopted as the judgment of the court on the question of the 18-year-old vote. Mr. Justice BLACK first indicates, as a basic proposition, that Congress possesses the power ". . . to make or alter election regulations in national elections, including the qualifications of voters, . . ." (Loc. cite 27 L.ed. 2d 279). He next quotes at length from the opinion of a unanimous court in Smiley v. Holm
(1932), 285 U.S. 355, 52 S.Ct. 397, 76 L.ed. 795, holding that Art. I, sec. 4, U.S. Const., authorizes Congress to supplement
election regulations that the legislatures of the state are authorized to prescribe with respect to congressional elections, or to substitute its own. He, therefore, concludes, at27 L.ed. 2d 281:
"In short, the Constitution allotted to the States the power to make laws regarding national elections, but provided that if Congress became dissatisfied with the state laws, Congress could alter them. . . ."
Mr. Justice BLACK again emphasizes the point, at27 L.ed. 2d 282, where he states: *Page 22 
". . . Moreover, Art. I, sec. 2, is a clear indication that the Framers intended the States to determine the qualifications of their own voters for state offices, because those qualifications were adopted for federal offices unless Congress directs otherwise under Art. I, sec. 4. . . ."
Therefore, although the state may not discriminate between its residents regarding the exercise of their franchise in an unconstitutional manner, voting regulations are within the jurisdiction of the state and are to be exercised as the state directs, except to the extent that Congress has restricted state action in reference to federal elections. The following general statement of the law appears in 25 Am. Jur. 2d, Elections, sec. 54 at pages 744-745:
"sec. 54. Source of right.
"The privilege to vote in any state is not given by the Federal Constitution, or by any of its amendments. Nor is it a privilege or immunity springing from citizenship of the United States. The privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and on such terms as it may deem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution. Generally speaking, the right of suffrage is derived from the states under state constitutions, or, in territories or territorial possession of the United States, under acts of Congress or territorial legislatures.
"Although the right to vote for Representatives in Congress is sometimes spoken of as a right derived from the state, it has been said that this is true only in the sense that the states are authorized by the Constitution to legislate on the subject to the extent that Congress has not restricted state action by the exercise of its powers to regulate elections and it more general power to make all laws that are necessary and proper for carrying into execution the power specifically delegated to it, and that the right of the people to choose Representatives in Congress is a right established and guaranteed by the Constitution and henceis one secured by it to those citizens and inhabitants of thestate entitled to exercise the right" (Emphasis added) *Page 23 
Thus, we note that voter qualifications established by the state, including the state resident requirement, apply to persons seeking to vote in federal elections as well as in state and local elections, unless the federal law prescribes otherwise. As stated in 25 Am. Jur. 2d, Elections, sec. 66, at page 758:
"A state has power to impose reasonable residence restrictions on the availability of the ballot, and state constitutions and statutes generally require as a prerequisite to the right to vote that the elector shall have been a resident of the state, county, and voting district for a specified period prior to the election. . . ."
Residency is a basic voter qualification in Wisconsin. ArticleIII, sec. 1, Wis. Const., provides, in part, that a qualified elector is one who "shall have resided" in this state and the election district where he offers to vote for a minimum period of time.
I am aware that Title II of the Federal Voting Rights Act Amendments of 1970 include provisions intended to affect thedurational residency requirements of the various states as they relate to voting for president and vice president and establish uniform standards in reference to absentee registration and voting in presidential elections. Although the thrust of these various provisions, as set forth in sec. 202 of the new statute, is to greatly liberalize the regulations relating to voting for president and vice president, they do not affect the basic function of this state under its constitution and statutes to determine who are and who are not residents of the state. See Carrington v. Rash (1965), 380 U.S. 89, 85 S.Ct. 775,13 L.ed. 2d 675; Evans v. Cornman (1970), 398 U.S. 419,90 S.Ct. 1752, 26 L.ed. 2d 370. Furthermore, although sec. 202 (c) of the new federal statute does make limited provision for a citizen to utilize the absentee ballot in the state of his prior residence, where he does not qualify to vote in the state or political subdivision to which he has removed, the federal statute does not appear to be applicable to a situation where an American citizen has abandoned his Wisconsin residency, removed from the United States and has established a new permanent residence in a foreign country for a number of months or years prior to the presidential election involved. *Page 24 
I am also aware that sec. 6.18, Stats., contains provisions similar to the absentee ballot provisions of the above-mentioned federal law. Since Art. III, sec. 1, Wis. Const., requires that an elector reside in the election district where he offers to vote, State ex rel. Wannemaker (1894), 87 Wis. 554, 558,58 N.W. 1045, it was necessary that the statute be submitted to the vote of the electorate under a special referendum procedure which is set forth in this constitutional provision before it could become part of the law of this state. See ch. 512, Laws of 1961 (approved November, 1962) and 44 OAG 106 (1955). This statute, which appears more liberal than the federal law, authorizes any former qualified Wisconsin elector to vote by absentee ballot in the precinct of his prior residence, in any presidential election occurring within 24 months after leaving Wisconsin, if that person is ineligible to qualify as an elector in the state to which he has moved. You will note that the statute not only includes a time period after which the privilege to vote absentee ceases, but also relates solely to removal from one state to another. Therefore, it does not appear that the Wisconsin Statutes provide authority for allowing former residents of this state, who now reside permanently in a foreign country, to vote by absentee ballot in a presidential election in the election district of the former residence in the State of Wisconsin, simply because the person has retained their United States citizenship.
The foregoing response should adequately answer the specific question you have raised. However, I feel I should further direct your attention to my previous election opinion, dated June 7, 1971, concerning absentee voting by people who appeared to have abandoned their Wisconsin residence and moved to another state. Much of what was said in that opinion also appears to be equally applicable to your present inquiry. That opinion, a copy of which is attached, discusses the nature of residency as a basic voter qualification in Wisconsin, and points out that, in order to insure that an ultimate determination on a question of voter qualification is legally effective, it must be reached by procedures in accord with the statutes governing elections. In the situation where a person appears to have abandoned his Wisconsin residence and established a permanent residence elsewhere, the specific question as to a voter's residency will probably most often arise and be treated under the provisions of secs. 6.48 (challenging *Page 25 
registration), 6.50 (revision of registry), or 6.93 (challenging the absent elector), Stats. These statutes are also discussed in the June 7, 1971, opinion referred to.
RWW:JCM